The People of the State of New York ex rel. The Wiebusch and Hilger Company (Limited), Respondent, v. James A. Roberts, as Comptroller of the State of New York, Appellant.

1. Corporation Tax — Basis, when no Dividends or Sales of Stock. The basis for assessing the tax under chapter 542, Laws of 1880, as amended before 1896, upon the capital stock employed in this state of a corporation which has paid no dividends, and of whose stock there have been no sales, during the tax year, is to be arrived at by ascertaining the actual cash value of such capital stock.

2. Actual Value of Capital Stock. The actual value of the capital stock of such a corporation is the value of its assets, after deducting its liabilities, and adding to the sum then remaining the value of the good will of the business, including its right to conduct it under its franchise.

*People ex rel. Wiebusch Co.* v. *Roberts*, 19 App. Div. 574, affirmed.

(Argued October 4, 1897; decided October 12, 1897.)

Appeal from a judgment and order of the Appellate Division of the Supreme Court in the third judicial department, entered July 17, 1897, which reversed the proceedings of the state comptroller upon the return to a writ of certiorari to review a revision of the tax of the relator, made by the comptroller.

The tax imposed upon the relator was in pursuance of the provisions of chapter 542 of the Laws of 1880, as subsequently amended, before 1896.

The relator is a domestic corporation, and during the year ending November 1, 1895, was engaged in business in this

state.   On the twenty-third of that month it made a report to the comptroller, stating fully its business transactions within the state.   It stated that it possessed no real estate within this state; that the authorized capital of the company was two hundred and fifty thousand dollars, and the number of shares twenty-five hundred; that that number was issued, and their par value was one hundred dollars each; that the capital was paid in in good will, property and money to the amount of two hundred and fifty thousand dollars; that no dividends had been declared; that it was engaged in foreign commerce, in the sale of goods and in manufacturing without the state; that the capital stock employed within the state was $67,300.09, and that there were no sales of its stock during the year.

It also stated that the value of the goods not imported, which were carried in stock by the company, was $173,333.34; that its average bank balance was $5,000; that the value of its office furniture and fixtures, was $1,309.75; that the average value of its accounts, credits and bills receivable, including the portion received from business of foreign commerce, was $97,500; that the goods imported by it remaining in original packages were of the value of $10,200; that the value of its plant used in manufacturing in Bridgeport, Conn., was $18,102; that the entire value of its gross assets was $305,445.09; that its liabilities in open accounts were $144,700, and its bills payable were $44,643, making its total liabilities $189,343, and its net assets $116,102.09.

Upon the receipt of this report from the relator, the comptroller assessed it on its capital stock, valuing it at the sum of $230,000, and establishing the tax at the sum of $345.   Subsequently, upon the petition of the relator and upon its complying with the provisions of the statute, a resettlement of the tax was had before the comptroller, when the relator's capital was appraised at $193,400, and the tax reduced to $290.10.

The Appellate Division held that it was only upon the balance, $98,000.09, that the comptroller was entitled to tax the relator, except that it might be assessed for the value of the good will of its business, and when that was determined, such

value, added to $98,000.09, was the value upon which the franchise tax of one and one-half mills was to be assessed.

*G. D. B. Hasbrouck* for appellant.   By the term capital as used in the Corporation Franchise Tax Law is meant the store, stock or property with which the corporation transacts its business up to the sum at which it is capitalized. (Cooley on Taxn. 2, 17; *People ex rel.* v. *Barker*, 147 N. Y. 31; *M. Ins. Co.* v. *Bd. Suprs.*, 4 N. Y. 442; *I. L. Ins. Co.* v. *Comrs.*, 28 Barb. 318; *Williams* v. *W. U. T. Co.*, 93 N. Y. 162; *People ex rel.* v. *Roberts*, 82 Hun, 314; *People ex rel.* v. *Wemple*, 138 N. Y. 588; *People ex rel.* v. *Coleman*, 126 N. Y. 433; *People ex rel.* v. *Wemple*, 133 N. Y. 323; *People ex rel.* v. *Wemple*, 150 N. Y. 46.)

*John B. Green* and *Edmund L. Cole* for respondent.   To ascertain basis of assessment, the indebtedness of the relator should have been deducted. (L. 1880, ch. 542, § 11; L. 1885, ch. 501; *People ex rel.* v. *Wemple*, 78 Hun, 63; 150 N. Y. 48, 50; *People ex rel.* v. *Campbell*, 66 Hun, 146; *People ex rel.* v. *Wemple*, 138 N. Y. 582; *People ex rel.* v. *Wemple*, 133 N. Y. 323; *People ex rel.* v. *Roberts*, 4 App. Div. 288; *People* v. *Comrs. Taxes*, 23 N. Y. 192–219; *People ex rel.* v. *Coleman*, 126 N. Y. 433; *New Orleans* v. *Houston*, 119 U. S. 265; *Penna.* v. *S. O. Co.*, 101 Penn. St. 119; *Williams* v. *W. U. T. Co.*, 93 N. Y. 188; *People ex rel.* v. *Coleman*, 112 N. Y. 565; *People ex rel.* v. *Barker*, 139 N. Y. 55; *Shelby Co.* v. *U. P. Bank*, 161 U. S. 149–161; *Farrington* v. *Tennessee*, 95 U. S. 686.)   So much of the capital stock as was employed in foreign commerce is not the subject of taxation. (*Brown* v. *State of Maryland*, 12 Wheat. 441; *Low* v. *Austin*, 13 Wall. 110; *Almy* v. *California*, 24 How. [U. S.] 173; Const. U. S. art. 1, §§ 8, 10; *People* v. *E. T. Co.*, 96 N. Y. 388; *People ex rel.* v. *Wemple*, 138 N. Y. 1; *Moran* v. *New Orleans*, 112 U. S. 69; *Fargo* v. *Michigan*, 121 U. S. 230; *Brennan* v. *City of Titusville*, 153 U. S. 289.)   The tax not being a property tax, is in violation of the Constitution of the

United States. (*H. Ins. Co.* v. *New York*, 134 U. S. 594; *People ex rel.* v. *Wemple*, 129 N. Y. 558, 564; *People ex rel.* v. *Campbell*, 74 Hun, 210; *People ex rel.* v. *Roberts*, 152 N. Y. 59; *C. P. R. R. Co.* v. *California*, 162 U. S. 116; *A. E. Co.* v. *Kentucky*, 166 U. S. 180; *C., C.; C. & St. L. R. R. Co.* v. *Backus*, 154 U. S. 439; *H. B. Co.* v. *Kentucky*, 166 U. S. 151; *A. E. Co.* v. *Ohio*, 166 U. S. 215; *Crutcher* v. *Kentucky*, 141 U. S. 47.) The tax, if held to apply to domestic corporations, makes a distinction between domestic and foreign corporations, and imposes a burden upon the domestic that cannot be imposed upon the foreign, both being engaged in precisely the same business. (*Fargo* v. *Stevens*, 121 U. S. 230; *People ex rel.* v. *Wemple*, 138 N. Y. 1; *People ex rel.* v. *Campbell*, 74 Hun, 210.) Good will is not taxable as capital stock. (*W. U. T. Co.* v. *Poe*, 61 Fed. Rep. 449; *A. E. Co.* v. *Poe*, 61 Fed. Rep. 470; *People ex rel.* v. *Wemple*, 150 N. Y. 48; *People ex rel.* v. *Roberts*, 152 N. Y. 59; *People ex rel.* v. *Coleman*, 126 N. Y. 433; *People ex rel.* v. *Barker*, 146 N. Y. 304; 152 N. Y. 417; *People ex rel.* v. *Neff*, 15 App. Div. 585; *People ex rel.* v. *Wemple*, 133 N. Y. 329; *People ex rel.* v. *Assessors*, 80 N. Y. S. R. 299; Cooley on Taxn. [2d ed.] 83–389.)

MARTIN, J. The first section of the statute under which the tax in question was imposed required the relator in the month of November in each year to make a written report to the comptroller, stating specifically the amount of its capital paid in and the date, amount and rate per centum of each and every dividend declared during the year ending the first day of that month. After providing the procedure by which the tax should be fixed where there was a dividend which exceeded six per cent on the par value of the stock, it required the officers of the relator, where no dividends were declared, or they were less than six per cent, to estimate and appraise the capital stock of the company at its actual cash value, not less, however, than the average price for which the stock sold during the year, and when so estimated and appraised the com-

pany was required to forward to the comptroller a certificate thereof, accompanied with a copy of their oath or affirmation thereto.

Section three of that act provided that every such corporation doing business in the state should be subject to pay a tax upon its corporate franchise or business, to be computed, where no dividends were declared or they did not exceed six per cent, at the rate of one and one-half mills upon each dollar of the valuation of the capital stock made in accordance with the provisions of the first section.

Section eleven declared that the basis for a tax under the provisions of section three should be the amount of capital stock employed within this state.

The tax in this case was upon the corporate franchise or business of the relator, and not under the general tax laws of the state. If the question in this case had arisen under the latter, there would be no doubt as to .the correctness of the determination of the learned Appellate Division, as it has been frequently held by this court that in determining the capital of a corporation for the purpose of general taxation the actual value of its corporate assets, less the debts and obligations of the corporation, is the true rule of assessment. (*People ex rel. U. T. Co.* v. *Coleman,* 126 N. Y. 433; *People ex rel. Roeblings' Sons .Co.* v. *Wemple,* 138 N. Y. 582–588.)

The statute under which the question in this case arises was intended to provide for a tax upon the franchise and business of a corporation, instead of a general tax upon its capital stock as the law previously existed. Therefore, we must refer to the provisions of that particular statute to ascertain, if possible, the manner in which the assessment in such a case is to be made. It will be observed that such a corporation is required to estimate and appraise the capital stock upon which no dividend has been declared at its actual value in cash, not less than the average price at which the stock sold for during the year. Section three provides for the tax, and that it shall be at the rate of one and one-half mills on each dollar of the valuation of the capital stock made in accordance with the

provisions of the first section   Section eleven limits the amount of capital stock upon which the tax is to be imposed to that portion which shall be employed in the state.

Thus, from the statute, it seems clear that two questions were to be determined : First, the amount of capital stock actually employed within the state, and, next, its value. It is to be observed that its value is to be determined in the manner specified in section one, which is absolutely required to be fixed at its actual cash value, except where stock has been sold during the year. In the latter event it must not be less than the price obtained. Simply stated, the provision of the statute is, that such of the capital stock of the relator as was employed in this state was subject to a tax which was to be based upon its actual value in cash.

The tax in this case could not be determined upon the basis of dividends, for the corporation had declared none ; nor upon the price at which its stock sold, as no sales were made. How, then, was the comptroller to ascertain the basis upon which to assess the tax ? Clearly by ascertaining the actual cash value of the capital stock employed in this state.

The record discloses the gross assets of the relator, its liabilities and the amount of its exemptions. Therefore, if the cash value of the capital stock liable to be taxed, is to be measured by the net assets of the corporation, after deducting its liabilities and the amount of its capital that is exempt, then clearly the decision of the court below was correct. So, also, in case there ought to be added to the net assets, after such deduction, the value of the good will of the business of the relator, the decision would still be correct, as that court has provided that upon a resettlement of the tax the value of the good will may be added.

The term or phrase " capital stock " has been several times under consideration by this court and its meaning defined, and the distinction between capital stock and shares of stock held by stockholders of a corporation has been pointed out, as will be seen in the following cases.

In *Williams* v. *Western Union Telegraph Co.* (93 N. Y.

162–188) the question arose as to the meaning of the term " capital stock " in the provisions of the Revised Statutes prohibiting the directors of a corporation from making dividends except from the surplus profits of a corporation, and Judge Earl there said : " The ' capital stock ' in this section does not mean share stock, but it means the property of the corporation contributed by its stockholders or otherwise obtained by it, to the extent required by its charter. While the term ' capital stock ' is frequently used in a loose and indefinite sense, in this section and in legal phrase generally, it means that and no more." He then cites *State* v. *Morristown Fire Association* (23 N. J. L. 195), where it was said : " The phrase ' capital stock ' is very generally, if not universally, used to designate the amount of capital to be contributed for the purposes of the corporation. The amount thus contributed constitutes the ' capital stock ' of the company." He then referred to *Burrall* v. *Bushwick R. R. Co.* (75 N. Y. 211), where Judge Folger defined " capital stock " as " money or property which is put in a single corporate fund by those who, by subscription therefor, become members of a corporate body," and, after referring to the definition of Vice Chancellor Sandford, in *Barry* v. *Merchants' Exchange Co.* (1 Sandf. Ch. 280), he added : " By loss or misfortune, or misconduct of the managing officers of a corporation, its capital may be reduced below the amount limited by its charter ; but whatever property it has up to that limit must be regarded as its capital."

In the *Coleman* case Judge Finch, in defining the words " capital stock " under the statute relating to general taxation, said : " The capital stock of a company is one thing ; that of the shareholders is another and a different thing. That of the company is simply its capital, existing in money or property, or both ; while that of the shareholder is representative, not merely of that existing and tangible capital, but also of surplus, of dividend-earning power, of franchise and the good will of an established and prosperous business." In *People ex rel. Singer Manufacturing Co.* v. *Wemple* (150 N. Y. 51), in discussing a similar question, Bartlett, J., in effect, said that a

surplus necessarily exerted a controlling influence in fixing the amount of tax, as it either swelled the dividends or increased the valuation of the capital stock, thus indicating that the value of the capital stock was dependent upon the money or property owned by the corporation.

It is doubtless true that, as the decisions cited, except the last, were in cases where the question arose under other and different statutes, they are not to be regarded as controlling upon this question. Still, as they contain definitions of this phrase, they should have some weight in determining the general and accepted meaning of the words "capital stock." Moreover, the last case was a decision under this statute, and there is in it a clear intimation that the former decisions as to the meaning of the term were correct, and are, to some extent at least, applicable to a case like this.

We think that the statute practically defines the manner of determining the basis for the tax in this case. It in effect declares that the capital stock shall be appraised at its actual value in cash, and that is made the basis upon which the tax is to be assessed. We are of the opinion that the actual value of the capital stock of such a corporation is the value of its assets, after deducting its liabilities, and adding to the sum then remaining the value of the good will of the business, including its right to conduct it under its franchise, and that the appellant's contention, that the liabilities of a corporation should not in such a case be deducted from its assets, cannot be sustained.

As the decision of the learned Appellate Division was to the effect that the tax against the relator should have been upon the sum of $98,000.09, with the value of the good will of its business added, instead of $193,400, it was substantially correct, and the determination of the comptroller was properly reversed.

The judgment and order of the Appellate Division should be affirmed, with costs.

All concur.

Judgment and order affirmed.