PEOPLE ex rel. JOURNEAY & BURNHAM CO. v. ROBERTS.

(Supreme Court, Appellate Division, Third Department. January 11, 1899.)

1. FOREIGN CORPORATIONS—TAXATION—CAPITAL—VALUE—EVIDENCE.

In appraising for taxation the capital of a foreign mercantile corporation employed in the state (Laws 1896, c. 908), the comptroller cannot arbitrarily discredit the probable and uncontradicted statement of a competent witness as to the gross value of the corporate assets.

2. SAME—DEDUCTION OF DEBTS.

The debts of the corporation should be deducted from the amount determined by the comptroller as the capital employed in the state, where the entire capital is employed there.

3. SAME—SUBJECTS OF APPRAISAL—GOOD WILL.

Where the corporation was organized to succeed to the property, business, and good will of a resident firm, and it continued the business in the state, the value of the good will should be included in the appraisal by the comptroller.

4. SAME—VALUE—EVIDENCE.

Evidence that the corporation could not put a price on the good will, and could get nothing for it, does not show that the good will is of no value, and thereby establish error of the comptroller in appraising the same at the figure set down as its value in the annual balance sheet of the corporation.

Certiorari by the people, on the relation of the Journeay & Burnham Company, to review the determination of James A. Roberts, as comptroller of the state, in settling a tax against relator for the year ending October 31, 1896. Determination modified.

The Journeay & Burnham Company is a corporation organized under the laws of the state of New Jersey in the year 1891 for the purpose of acquiring and carrying on the business formerly conducted by the firm of Journeay & Burnham in the city of Brooklyn, N. Y., and of buying and selling merchandise and commodities, and trading therein. The corporation was organized with a paid-up capital of $1,000,000. All the stock, 10,000 shares, was issued, and divided into classes,—5,000 shares of preferred and 5,000 shares of common stock. On its incorporation it acquired the property, good will, and business of the firm of Journeay & Burnham, and has ever since conducted a business in the city of Brooklyn, N. Y. For the year ending on October 31, 1896, dividends of 8 per cent. on the preferred and of 2 per cent. on the common stock were declared and paid. The corporation had no property and did no business in any other place than at Brooklyn, N. Y., except that its directors met in New Jersey. Seventy-five thousand dollars of its property, during the year in question, was engaged in the business of manufacturing. The comptroller taxed the relator on the full amount of its capital stock, less $75,000 employed in manufacturing during said year, computing the tax as follows: Preferred stock, computed at $462,500, on which 8 per cent. dividend was paid, at the rate of one-fourth of a mill for each 1 per cent., $925; common stock, computed at $462,500, on which 2 per cent. dividend was paid, at the rate of 1½ mills on each dollar of the estimated value thereof, $693.75, —making the total tax $1,618.75. It is claimed that the comptroller erred in the appraisal of the value of the capital of the relator employed in business in this state during the year in question by reason of overvaluation. Section

182, c. 908, Laws 1896, under the provisions of which the tax in question was imposed by the comptroller, provides as follows: "If such corporation, joint stock company or association shall have more than one kind of capital stock, and upon one of such kinds of stock a dividend or dividends amounting to six, or more than six per centum, upon the par value thereof, has been made or declared, and upon the other no dividend has been made or declared, or the dividend or dividends made or declared thereon, amount to less than six per centum upon the par value thereof, then the tax shall be at the rate of one-quarter of a mill for each one per centum of dividends made or declared upon the capital stock upon the par value of which the dividend or dividends made or declared amount to six or more than six per centum, and in addition thereto a tax shall be charged at the rate of one and one-half mills upon every dollar of the valuation made in accordance with the provisions of this act of the capital stock upon which no dividend was made or declared, or upon the par value of which the dividend or dividends made or declared did not amount to six per centum. Every corporation, joint stock company or association organized, incorporated or formed under the laws of any other state or country, shall pay a like tax for the privilege of exercising its corporate franchises or carrying on .its business in such corporate or organized capacity in this state, to be computed upon the basis of the capital employed by it within this state."

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

Edmund L. Cole (John B. Green, of counsel), for relator.

T. E. Hancock, Atty. Gen. (G. D. B. Hasbrouck, Dep. Atty. Gen., of counsel), for defendant.

PUTNAM, J.    By the provisions of the act of 1896, above quoted, a distinction is made between a domestic and a foreign corporation. The former, when it has two kinds of stock, on one of which a dividend of more than 6 per cent. is paid, and on the other a dividend of less than 6 per cent., must pay one-quarter of a mill for each 1 per centum of the dividends over 6 per cent. on the par value of such stock, and a tax of $1\frac{1}{2}$ mills on the dollar on the valuation of the stock on which dividends less than 6 per cent., or no dividends, have been declared.    But the act provides that a foreign corporation shall pay a like tax, to be computed upon the basis of the capital stock by it employed in this state.    Thus, in People ex rel. New England Dressed Meat & Wool Co. v. Roberts, 155 N. Y. 408, 50 N. E. 53, it appeared that the capital stock of the relator was originally $400,000, which was afterwards increased to $800,000.    The comptroller determined that the capital employed by the corporation in this state during the two years ending October 31, 1895, was $45,900, and during the year ending October 31, 1896, $30,600.    The corporation had made dividends during the years in question of over 6 per centum.    The comptroller settled the tax against the corporation at the rate of one-quarter of a mill for each 1 per centum of dividends declared during said years, computed on the basis of the capital he had thus determined was employed in this state.    This manner of computation was not disapproved by the court of appeals in the case cited.

The question is therefore presented as to the amount of the capital of the relator employed in this state in the year ending October 31, 1896.    The comptroller determined that the full amount of its original capital—$1,000,000—was thus employed, and, deducting the $75,-

000 thereof used in the business of manufacturing, settled the sum on which the relator was liable to pay a tax at $925,000. In the proceedings before the comptroller, with a view of showing the actual amount and value of the capital of the relator in this state in 1896, a balance sheet, prepared by its officers on January 1, 1897, conceded to show the situation of the company as well during the year 1896 as of the time it was used, was introduced at the instance of the comptroller, and is as follows:

Balance Sheet, January 1, 1897.

| Assets. | Book Value. | Actual Value. |
|---|---|---|
| Cash | $ 4,096 05 | $ 4,096 05 |
| Accounts receivable | 224,940 82 | 100,000 00 |
| Bills receivable | 10,820 42 | 2,500 00 |
| Furniture, fixtures, horses and wagons, machinery and tools | 25,882 90 | 16,067 13 |
| Merchandise | 408,310 89 | 250,000 00 |
| "　　　Mfg. | | 67,000 00 |
| Expense | 3,886 13 | 1,000 00 |
| P. & L., 1891 | 16,766 35 | |
| Journeay & Burnham business | 381,529 13 | |
| Total assets | $1,076,232 69 | $440,663 18 |

The second column of figures was not upon the balance sheet when made, but was afterwards placed thereon by the direction of the officers of the relator, as it is claimed, with a view of showing the true value of the assets of the corporation. On the hearing before the comptroller, one Conkling, an employé of the relator, testified in regard to the item, "Accounts receivable, $224,940.82," in the balance sheet, that such accounts were not in fact worth over $100,000; that many of the accounts were worthless, and against irresponsible parties, or barred by the statute of limitations; that the item embraced a quantity of uncollectible accounts acquired from the firm of Journeay & Burnham, and also accrued since the incorporation of the relator, which had been accumulating for years, and in value did not exceed $100,000. The witness also testified that the item "Bills receivable," valued at $10,820.42 on the balance sheet, did not exceed in value $2,500; that the merchandise on such statement, called worth $408,310.89, was not in fact worth over $250,000. The witness was not contradicted. His statement was not improbable, and he fully explains the facts upon which his judgment is based. He had been in the employ of the relator and of the firm who had conducted the same business before it was purchased by the former. He was, therefore, fully competent to testify as to the value of the stock and accounts owned by the relator. We think that, in the absence of any conflicting testimony, the comptroller was not authorized to discredit the probable statement of the witness as to the true value of the property in question. The comptroller, if he doubted the statement, might have required an inventory of the accounts and bills and of the merchandise, and called other witnesses as to the value thereof. Failing to do so, we think he could not arbitrarily reject the testimony of the witness, who, from the return, appears to be fully competent, and whose statement was not improbable.

In People v. Barker, 141 N. Y. 251–255, 36 N. E. 196, an officer of the corporation having made, under oath, a valuation of assets to the commissioners of taxes, it was said in regard to the commissioners:

"If they were dissatisfied with his valuation of assets in gross, they could have required them to be given in detail, and so been enabled to judge of the fairness or unfairness of the valuation; but they were not justified in assuming that the treasurer, for the purpose of evading taxation, had falsely underestimated the assets, because of a recent dividend, the declaration of which did not necessarily involve the fact of an unimpaired capital."

Those remarks can be properly applied to this case.

It was shown at the hearing that the relator was indebted in the sum of $93,253.24. This sum should have been deducted from the amount determined by the comptroller as the capital employed by the relator in this state. People ex rel. Wiebusch & Hilger Co. v. Roberts, 154 N. Y. 101, 47 N. E. 980.

It is claimed by the relator that the item in the balance sheet, "Journeay & Burnham business, $381,529.13," should have been deducted from the amount charged against it. The witness Conkling testified that this item represented the value of the good will and name. We are unable to concur with the contention of the relator in this regard. All its property and business is in this state. The object of its incorporation was to acquire and continue the business of the firm of Journeay & Burnham, of the city of Brooklyn, N. Y. Under the circumstances, the value of the good will and name of the business was part of relator's capital stock employed in this state. The balance sheet showed that the value of the good will and name was $381,529.13, and there was no satisfactory evidence to contradict the admission of the relator contained in said paper. All that the witness Conkling testified to on the subject was, "We couldn't put a price on it; we couldn't get anything for it." Such testimony is far from showing that the good will was of no value, or what its value was. On the rehearing the burden was upon the relator to show error, if any there was, on the part of the comptroller, in estimating the value of its property employed in this state. We think the relator failed to show such error in regard to this item. The comptroller, therefore, was justified in taking the statement of the balance sheet as to the value of the good will and name.

Our conclusion is that certain reductions should be made from the sum which the comptroller determined represented the value of the capital employed by the relator in this state, as follows:

| | | |
|---|---|---|
| Amount of assets as stated in balance sheet..................... | | $1,076,232 69 |
| Deduct property employed in manufacturing...... | $ 75,000 00 | |
| Debts ...................................... | 93,253 24 | |
| Difference between value of accounts and bills, as stated in "real value"...................... | 133,261 24 | |
| Difference between value of goods on statement and real value.............................. | 158,310 89 | |
| | | 459,825 37 |
| Balance .......................................... | | $ 616,407 32 |

The determination of the comptroller should be modified accordingly, and the amount of the capital employed in this state settled at the sum

above mentioned, on one-half of which the relator should pay a tax at the rate of 2 mills, and on the other at the rate of 1½ mills.

The determination of the comptroller is modified accordingly, without costs to either party. All concur.