### PEOPLE ex rel. LORENA CO. v. MORGAN, State Comptroller.

(Supreme Court, Appellate Division, Third Department. November 14, 1900.)

1. TAXATION—ASSESSMENT OF CORPORATION.

    In assessing a land corporation, owning only an equity in certain land, its capital stock should be appraised at its actual value in cash, which would be the value of its land, after deducting its indebtedness and adding nothing for its good will; that appearing to be of no value.

2. SAME—PROCEEDINGS BEFORE STATE COMPTROLLER—EVIDENCE.

    In proceedings before the state comptroller to assess corporate property, which consists entirely of an equity in land, proof of its purchase price and of its value as fixed in prior proceedings by the corporation against town assessors should be received as evidence of its value; and, while not conclusive, the comptroller cannot wholly disregard it, when it is the only evidence, and, without notice to the corporation and an opportunity to produce further evidence, arbitrarily fix the assessed value as equivalent to the par value of its corporate stock.

**3. SAME—REVIEW BY CERTIORARI.**

Where, on certiorari to review the determination of the state comptroller in assessing a corporation, it is not entirely clear from the evidence whether an equity in certain property admitted to belong to the corporation should not be added to the value of its capital stock, the doubt will be resolved against the relator, and it will be made to suffer the consequences.

Certiorari by the people on the relation of the Lorena Company, against William J. Morgan, as state comptroller. Determination of respondent modified.

Certiorari issued out of the supreme court and attested on the 24th day of April, 1900, directed to William J. Morgan, as comptroller of the state of New York, commanding him to certify and return to the office of the clerk of the county of Albany, all and singular, his proceedings in the settlement of an account for taxes against the relator for the years 1896, 1897, and 1898. The relator is a domestic corporation incorporated June 27, 1896, for the purpose of owning, renting, and dealing in real estate. The relator's capital stock is $500,000, and its entire property consists of real estate of over 300 acres, situated in the town of Greensburg, in Westchester county, N. Y. Five hundred dollars of its capital stock was paid for in cash, and the remaining $499,-500 was issued to Mr. Barber in payment of real estate conveyed by him to the company. Barber had purchased the property for $665,000, subject to mortgages thereon amounting to $531,000, and conveyed it to the relator subject to the said mortgages, which remain as a lien on the property. No dividends have ever been declared, and there have not been any sales of stock. Lots have been for sale by the relator since 1895, and but two have been sold. The only property of the relator is its equity in the real estate, and no net income has been derived therefrom since its purchase in June, 1896. On October 31, 1896, the relator had incurred an indebtedness to Mr. Barber, on account of moneys advanced by him for taxes, interest on mortgages, repairs and improvements on the property, of $43,113.90; on October 31, 1897, of over $170,000; and on October 31, 1898, of over $210,000. There was a rehearing before the comptroller, on which evidence was given by the relator of the value of its property, the amount of its indebtedness, and other matters, and thereafter the comptroller settled an account against the relator for taxes on its capital stock for the years ending October 31, 1896, October 31, 1897, and October 31, 1898, appraising its capital stock for the year 1896 at $484,700, for the year 1897 at $457,845, and for the year 1898 at $426,500, which sums, as appears by the return, were arrived at by fixing the value of the capital stock at $500,000, its par value, and deducting a depreciation up to October 31, 1896, of $15,300; up to October 31, 1897, of $42,155; up to October 31, 1898, of $73,500. The writ of certiorari has been issued to review this determination.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Niles & Johnson (Wm. W. Niles, Jr., of counsel), for relator.
John C. Davies, Atty. Gen. (Robert E. Steele, Dep. Atty. Gen., of counsel), for respondent.

EDWARDS, J. The basis on which a tax against the relator should be assessed is its capital stock, appraised at its actual value in cash. Its actual value is the value of its assets after deducting its liabilities. People v. Roberts, 154 N. Y. 101, 47 N. E. 980; People v. Same, 37 App. Div. 1, 55 N. Y. Supp. 317. The return does not disclose the process by which the comptroller arrived at the value of the capital stock, but it is evident that he assumed that its par value, $500,000, was its real value. He says in his return

"that he based his determination on said revision upon the following facts, viz.: That for the year ending October 31, 1896, the value of the capital stock of the relator was $500,000, less a depreciation up to that time of $15,300, leaving $484,700." He proceeds in the same way for the years 1897 and 1898, taking each year the par value of the stock as its actual value, and making deductions for what he calls "depreciation" in each year. The manner by which he arrives at this depreciation is not disclosed by his return, but becomes evident on examination of the evidence given by the relator. It appears that the indebtedness incurred for moneys advanced the first year to pay taxes and interest on the mortgages was $15,226.97, and unquestionably those constitute the depreciation found by him of $15,300. The indebtedness incurred for moneys advanced for the same purpose to October 31, 1897, was $42,157.20, and his deduction from the $500,000 for depreciation up to that time was $42,155,— substantially the same figures. The indebtedness incurred for moneys advanced for the same purpose to October 31, 1898, was $73,501.68, and his deduction for depreciation up to that time was $73,500,—a difference of only $1.68. It is evident, therefore, that the comptroller, in fixing the value of the capital stock of the relator, has assumed, without evidence, that the par value of its capital stock ($500,000) was its real value, and has deducted therefrom each year the indebtedness incurred for taxes and insurance. It is quite obvious, that he has, in his determination, proceeded upon a false basis. In estimating the actual value of the capital stock, he should have taken the value of the property, and deducted therefrom the indebtedness of the corporation. Of course, there is nothing to be added in this case for the good will; for it had, as clearly appears, absolutely no value. The only evidence as to the value of the property of the relator was that which was produced upon the hearing. There is no question that its only property is its equity in its real estate. The real estate was purchased by Barber, who is really the company, for $665,000, subject to the mortgages then and now existing thereon, of $531,000, making the equity therein $134,000; and for this equity of $134,000 all of the capital stock of the company, except $500, was given. It is true that the treasurer testified that the company, at the time of its purchase of the property, believed the equity to be worth the amount of the capital stock. The company, as I have said, was in fact Mr. Barber, who may have honestly believed in June, 1896, that the property had a large prospective value, but results have shown that he was under the fatal delusion which has come upon many other purchasers of real estate for speculation. The value then placed on the equity, as the result has shown, was somewhat imaginary or fanciful. The only evidence, on the hearing, of the value of the property, is the purchase price, and the judgment of the supreme court fixing its value for the year 1897, in proceedings instituted by the relator against the assessors of the town of Greensburg, at $646,500. That judgment was received in evidence by the comptroller under objections, and the respondent now claims that it should be disregarded as any evidence of value. While it was not binding on the comptroller, I am not clear but it

was competent for him to receive it as some evidence of value; and, having done so, he should not be permitted thereafter to disregard it, without notice to the relator, and ·without any opportunity to the relator to produce further evidence. But the same thing was given in evidence without objection. A witness for the relator was permitted to testify that the amount of the assessment for 1897 was $646,500. This, together with the evidence received of what the property cost, is the only evidence in the case of its value; and the comptroller was not at liberty to reject it, and arbitrarily fix the value of the capital stock at its par value. I think, upon this appeal, we must accept one of these sums—and the difference between them is not very material—as the value of the real estate. If we assume it to be the sum paid, $665,000, and deduct the mortgage incumbrance, $531,000, we have an equity of $134,000. It is undisputed that on October 31, 1896, the indebtedness of the company was $43,113.90, which deducted from the value of the equity would leave the value of the capital stock for 1896 $90,886.10. This calculation has been made without regard to what in the evidence is called the "Lindley Property," which appears to have been purchased by the relator at some time between June, 1896, and July 18, 1899,—the time of the hearing before the comptroller; but it does not appear in the record when the purchase was made. This was purchased by the company for the sum of $62,457.06, subject to a mortgage thereon of $40,000. The balance of the purchase price was borrowed by the company of Mr. Barber, and now constitutes a part of the indebtedness of the relator to him. This Lindley property does not seem to be included in that upon which the estimate has been made, although the record seems to leave it somewhat in doubt. I am not entirely clear, from the evidence, whether the equity in that property should be added to the value heretofore ascertained of the capital stock; but, as the relator has left it somewhat in doubt, I think it should suffer the consequence, and the $22,457.06 should be added to the $90,886.10, making the actual value of the capital stock for the year 1896 $113,343.16. It appears in the evidence that the value of the relator's property for 1897 and 1898 was no greater than the sum which I have fixed for 1896, and it also uncontradictedly appears that in the year 1897 the relator's indebtedness was over $170,000, and in 1898 over $210,000, being in each of those years largely in excess of its property. Consequently the capital stock for the years 1897 and 1898 had no value. I am therefore of opinion that the value of the capital stock of the relator employed within the state for the year 1896 was $113,343.16, on which it should pay a tax of $1\frac{1}{2}$ mills on each dollar, and that its capital stock for the years ending October 31, 1897, and October 31, 1898, had no value. The determination of the comptroller should be modified accordingly.

Determination of the comptroller modified as specified in opinion, and as modified affirmed, with $50 costs to relator. All concur.