The only question is whether the evidence in connection with the pleadings established a case proper for the consideration of a jury. The contract stated *Page 110 
in the complaint is somewhat peculiar in its character. It binds the defendant for an indefinite period to supply the plaintiff exclusively with newspapers for a particular district, for a stipulated sum, and of course to withhold them from all others during the existence of the agreement; while the carrier was at liberty to abandon the contract at pleasure, without subjecting himself to any liability to the editor for his non-performance. The defendant was obliged to keep up his establishment and continue the paper, although his own interest and that of the public might require its discontinuance; while the plaintiff could treat the privilege of distributing the newspaper as property, and dispose of it at will, and transfer all his rights to an assignee, without the assent and against the will of the proprietor. It must be concluded that there was no mutuality in such an arrangement. No express contract to that effect is pretended, and it is to be implied, if made, from the fact that the supposed privilege of vending or serving the paper in a particular district was the subject of sale and purchase among the carriers themselves, to the knowledge of the defendant. These sales, it is obvious from the circumstances disclosed, were of the probability or chance that the business of the establishment would continue to be conducted as theretofore, and that the assignee would stand upon the same footing as the previous carrier, because it was indifferent to the defendant what person purchased his paper and supplied a given district, provided the number of copies disposed of was the same. There was nothing in all this resembling a contract for an exclusive privilege between the proprietor and the carrier. The nature of the business repels any such presumption. It was conducted upon the cash system. The paper was sold, as the witnesses inform us, to whoever would purchase, and the vendor had the right to give or sell his property, like an article of merchandise, whenever or wherever he could find a purchaser. That one carrier would abstain from encroaching on the district of another is probable, for such was their *Page 111 
interest; but that no such respect was paid to their supposed rights by others is apparent from the fact that boys were in the practice of vending the papers all over the city. No complaint on this account was ever made to the proprietor of the paper. This would have been the natural course had the carriers supposed that their privileges rested in contract. But the only method of ridding themselves of this interference which seems to have occurred to them, was, as one of them stated, to "scare them off." There can be no doubt that these boys had as perfect a right to sell their papers in the fifteenth ward as the carrier or the proprietor of The Herald himself.
On the whole, I agree fully with the learned judge who presided at the trial, that there was no fact established by the answer or the evidence from which a contract could be implied according to the allegations of the plaintiff. The complaint was therefore properly dismissed, and the judgment of the superior court should be affirmed.