The People of the State of New York ex rel. The A. J. Johnson Company, Appellant, *v.* James A. Roberts, as Comptroller of the State of New York, Respondent.

1. Tax — Copyrights. Copyrights, granted by the United States, are not subject to the taxing power of the state.

2. Foreign Corporations — Franchise Tax — Exemption of Copyrights. Copyrights, as distinguished from the tangible property produced thereunder, owned by a corporation of another state carrying on business in this state, are not taxable as "capital employed by it within this state," under section 182 of the Tax Law (L. 1896, ch. 908).

3. Good Will Defined. Good will embraces at least two elements, the advantage of continuing an established business in its old place, and of continuing it under the old style or name. While it is not necessarily altogether local, it is usually to a great extent, and must, of necessity, be an incident to a place, an established business or a name known to the trade.

4. Taxation of Good Will Acquired in this State. The good will of a foreign corporation, acquired and built up in this state and having a market value here, where its business is carried on, and nowhere else, is not exempt from taxation as capital employed within this state, merely because it is intangible.

5. Good Will of Foreign Corporation, Carrying on Business Wholly in this State, is Subject to Franchise Tax. Where a corporation which, although organized in another state, has never done any business, owned any property or had an office there, but which has carried on its business wholly in this state, where all its tangible property is

located, has acquired a good will created here and has built up the same by the exercise of its corporate franchises and through the increased value of its tangible property in this state, such good will is properly taxable as capital employed within this state, under section 182 of the Tax Law.

People ex rel. A. J. Johnson Co. v. Roberts, 35 App. Div. 624, reversed.

(Argued March 1, 1899; decided April 25, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, made November 29, 1898, affirming, on certiorari, a determination of the state comptroller in assessing a tax upon the relator for the privilege of carrying on business in this state.

The relator was organized under the laws of the state of West Virginia, with a capital stock of $250,000, divided into one hundred and fifty shares of preferred stock and one hundred shares of common stock, each share being of the par value of $100. · It was incorporated to publish and sell Johnson's Universal Cyclopædia, under copyrights, of which it became the assignee and owner. The comptroller imposed a tax upon it for the year ending October 31st, 1897, of $782.50, calculated upon a dividend of twenty per cent paid during the year on $135,500 of preferred stock issued and upon a valuation of the $88,000 of common stock issued, at $70,000. Subsequently, upon the relator's application, the tax was revised and settled by the comptroller at the sum of $612.98, which figure of assessment was reached by stating the amount of the preferred capital stock at $111,450, and the value of the common stock at $37,150.

. The relator has objected to the assessment upon various grounds, among which are these : That its property is nearly all invested in copyrights, and that the capital stock employed within this state constituted only the tangible assets and did not embrace either those copyrights or the good will of the company ; that the state has no jurisdiction to tax it for the privilege of publishing a copyrighted production, and that the decision of the comptroller is without any basis in fact or evidence.

The tangible assets within the state, as testified to, were the

average value of cyclopædias printed within the state during the year, amounting to $55,000 ; an average bank account of $1,800, and accounts receivable of $17,000. From the aggregate of these items, namely, $73,800, debts for rent and salaries, amounting to $10,000, were deducted, leaving a sum of $63,800, which the relator claims represents the value of its tangible assets and the amount of capital employed here. The relator had no office in West Virginia and, substantially, the whole business of the corporation was conducted at its office in the city of New York, and consisted in putting upon the market, and selling, a new edition of Johnson's Universal Cyclopædia.

The comptroller, in his return to the writ of certiorari, stated, " That he determined from the evidence, and from the information from all sources which he was able to obtain, that the amount of capital stock employed by the relator in the state of New York, for the year ending October 31, 1897, was $148,600, and that among the items of property which went to make up that amount were the books, copyrights and the good will of the corporation and the good will acquired by it, which copyrights, good wills and property were determined by me to have their situs and to be amenable to taxation under chapter 542, Laws of 1880, and the acts amendatory thereof, in New York State." The Appellate Division in the third department affirmed the comptroller's decision and the relator now appeals to this court.

*J. Hampden Dougherty* for appellant. The capital stock employed within this state consisted only of tangible assets. and did not embrace either good wills or copyrights. (*People ex rel.* v. *Wemple*, 133 N. Y. 323; *People ex rel.* v. *Wemple*, 150 N. Y. 49; *People ex rel.* v. *Roberts*, 25 App. Div. 16 ; *People ex rel.* v. *Roberts*, 27 App. Div. 455; *People ex rel.* v. *Roberts*, 8 App. Div. 204; *People* v. *E. T. Co.*, 96 N. Y. 387; *Plimpton* v. *Bigelow*, 93 N. Y. 592; *People ex rel.* v. *Wemple*, 138 N. Y. 1; *People ex rel.* v. *Roberts*, 156 N. Y. 585; Thompson on Corp. § 810.) The electrotype

1899.] People ex rel. A. J. Johnson Co. v. Roberts. 73

N. Y. Rep.]                    Opinion per Gray, J.

plates are not capital employed in this state, and if they were such, they have no value apart from copyrights. (*Stevens* v. *Gladding*, 17 How. [U. S.] 447.) If the Revised Tax Law (L. 1896, ch. 908, § 182) were to be construed so as to require taxation of the copyrights and good will of the relator, such a construction would offend against the Federal Constitution, for patent rights and copyrights are exclusively derived from the Federal government and are not subject to taxation in any sense by the states. (*People ex rel.* v. *Bd. Assrs.*, 156 N. Y. 417; *Patterson* v. *Kentucky*, 97 U. S. 503; *Webber* v. *Virginia*, 103 U. S. 344; *Ex parte Robinson*, 2 Biss. 309; *Matter of Sheffield*, 64 Fed. Rep. 833; *G. & B. S. M. Co.* v. *Butler*, 53 Ind. 454; *Com.* v. *Petty*, 29 L. R. A. 786; *Com.* v. *W. E. & M. Co.*, 151 Penn. St. 265; *Com.* v. *W. A. B. Co.*, 151 Penn. St. 276; *Com.* v. *Phila. Co.*, 157 Penn. St. 527; *Com.* v. *E. E. L. Co.*, 157 Penn. St. 529.) This state has no jurisdiction to tax the relator for the privilege of publishing a copyrighted production. (*California* v. *C. P. R. R. Co.*, 127 U. S. 41; *Miller* v. *Taylor*, 4 Burr. 2396.) The franchise tax is a tax upon the privilege of exercising franchises. Such a tax cannot be levied upon the relator's franchises. (L. 1896, ch. 908, § 182.)

*John C. Davies, Attorney-General*, and *G. D. B. Hasbrouck* for respondent. The relator is engaged in the transaction of business within this state, and its capital stock is employed here. (U. S. R. S. § 4952; *Palmer* v. *De Witt*, 47 N. Y. 539; *People ex rel.* v. *Campbell*, 138 N. Y. 547; *People ex rel.* v. *Roberts*, 154 N. Y. 108.) The situs of these copyrights and the good will is in the state of New York. (27 Beav. 53; *Bell* v. *Locke*, 8 Paige, 75; *White* v. *Jones*, 1 Abb. [N. S.] 337; *Howe* v. *Searing*, 6 Bosw. 354; *Dayton* v. *Wilkes*, 17 How. Pr. 510; *P. C. Co.* v. *Pennsylvania*, 141 U. S. 22; *Martine* v. *I. L. Ins. Soc.*, 53 N. Y. 339.)

Gray, J. The important question, which arises upon this appeal, is whether a tax could legally be assessed upon the relator which included, in the items going to make up the

amount of capital employed within this state, the copyrights and the good will of the corporation. The statute provides that the tax upon a foreign corporation " is to be computed upon the basis of the capital employed by it within this state," (Sec. 182, chap. 908, Laws of 1896), and we have held that that means only such of the capital as was represented by the value of property, whether of money, goods or other tangible things. (*People ex rel. Seth Thomas Clock Company* v. *Wemple*, 133 N. Y. 323.) It is the policy of the state, with respect to corporations which are created under the laws of another state or country and do business in this state, that a tax should be assessed upon that business. The jurisdiction to impose the tax is gained by reason of the business which they are privileged to do here under the protection of our laws. (*People ex rel. A. C. & D. Co.* v. *Wemple*, 129 N. Y. 558.) So far as the franchises themselves of the foreign corporation are concerned, they are beyond the reach of our tax laws. They are derived from the governments to which they owe their creation and can only be subjected to taxation by the laws of those governments. When it is sought to exercise them within this state, the condition of the right to do so is the liability to taxation and control by the legislature, so far as the capital can be seen to be employed in business here. The domicile of this relator, in legal contemplation, is in the state of West Virginia, and it is difficult to conceive of any taxation of its properties within this state, unless it be confined to such as are corporeal and tangible. The only properties of that nature, which represented the capital of the relator in this state, consisted in cyclopædias which were printed and put upon the market and in its pecuniary assets, in bank account, or in accounts receivable. Its copyrights are Federal grants of privileges and no more power exists to include them in the valuation for assessment purposes, than would exist with respect to patent rights. It has been but recently held by us, in *People ex rel. Edison El. Il. Co.* v. *Assessors*, (156 N. Y. 417), that patent rights cannot be made the subject of taxation, and if they are not taxable, clearly, the same prin-

1899.] People ex rel. A. J. Johnson Co. *v.* Roberts. 75

N. Y. Rep.]  ·  Opinion per Gray, J.

ciple, which exempts them from the taxing power of the state, should exempt copyrights. In the case just referred to, the assessment included a certain sum for United States patent rights and we held that the question of the right of the taxing power of the state to assess patent rights was no longer an open one, within the decisions of the United States Supreme Court, there referred to. The doctrine, as settled by authority, is that the incorporeal right of discovery is protected by national authority against all interference; but the use of the tangible property, which comes into existence by the application of the discovery, is not beyond the control of state legislation. (*Patterson* v. *Kentucky*, 97 U. S. 501; *Webber* v. *Virginia*, 103 id. 344.) The state has not the power to interfere with the privilege of using a person's property in inventions by taxing him upon the same and, if that be true, the same principle operates to deny to the state any power to tax the owner of a copyright for the privilege of using his right. The property in the plates, instruments, books, etc., and the copyright secured to the author are altogether different and independent of each other. The latter, as an exclusive right to the multiplication of the copies for the benefit of the author, or his assigns, is an incorporeal right, and has no physical existence. (*Stephens* v. *Cady*, 14 How. [U. S.] 528.) The state should be confined, in the exercise of its taxing power, as in the case of patent rights, to the tangible property which is produced under the protection of the exclusive right granted by the Federal government. It cannot prevent the relator from exercising its franchise here, as the owner of copyrights; for they are privileged and protected by the Federal Constitution. To concede a right to tax them would be to concede a power to impede, or burden, the operation of the laws enacted by Congress to carry into execution a power vested in the national government by the Constitution.

I think that the comptroller was in error, when he included, as a basis for assessment of the relator's capital employed within this state, its copyrights.

Nor does the power exist to assess a foreign corporation upon its good will. That is an intangible asset of the corporation, whose only conceivable situs is at its domicile. It is the reputation of the business. It may be defined as the right acquired to continue the publication and sale of the cyclopædia, under the protection of the copyrights, and that could not be regarded as capital employed within this state. Its good will may contribute a value to its business products, undoubtedly; but it is based on the Federal privilege and on that account, as for its incorporeal nature, is beyond legislative control here. It appertains to the corporation as such and can exist only where the corporation exists, viz. : within the territory of the government which created it.

There is no authority in the statute for imposing a tax upon a foreign corporation ; unless it is imposed upon the amount of " the capital stock employed by it within this state." (Sec. 181, ch. 908, Laws of 1896.) We have had occasion to see in the *Seth Thomas Clock Company's Case* (133 N. Y. 323), upon what property of a foreign corporation, which is doing business within this state, a tax can be assessed. It was said in the opinion in that case that, " only such part of it, (the capital stock), was employed within this state as was represented by the actual value of property, whether in money, goods or other tangible things. It kept goods for sale here. It had money on deposit, and it may be other property. This, whatever its value, was the basis of taxation. That property represented all the capital employed in this state." The theory of that decision was that there is no basis for taxation, if the foreign corporation does not employ any of its capital stock here, and the exclusion from assessment of any property not of a tangible nature was in accord with what we have considered, in the *Union Trust Company Case*, (126 N. Y. 433), to constitute the capital stock of the company. In that case, although the subject for decision was the liability of the relator under the General Tax Laws of the state, the opinion discussed elaborately the relative significance of " the capital stock of a company and the capital stock which is held in shares by the

corporators." It was said : "The two things are neither identical nor equivalents. The capital stock of a company is one thing; that of the shareholders is another and a different thing. That of the company is simply its capital, existing in money or property, or both; while that of the shareholders is representative, not merely of that existing and tangible capital, but also of surplus, of dividend earning power, of franchise and the good will of an established and prosperous business." And it was observed that, "there are reasons in abundance for the conclusion that by the phrase ' capital stock ' the statute means not the share stock, but the capital owned by the corporation ; the fund required to be paid in and kept intact as the basis of the business enterprise, and the chief factor in its safety." It is to be noticed that the good will of a corporate business is regarded as something which attaches to the interests of the shareholders and which is not part of the capital stock of the company, and that it gives an added value to the interests of the former. The doctrine of that case influenced us in the *Seth Thomas Clock Company's* case and induced the conclusion that, with respect to foreign corporations, their capital stock employed in this state could not exceed the property which they kept here in the transaction of their business. In the case of a domestic corporation, however, the field of assessment is wider and comprehends both the corporate franchise and the business. Nothing is beyond the reach of the taxing power of the state in such a case, which is not rendered exempt by Federal law. Therefore it was that in *People ex rel. Wiebusch & H. Co.* v. *Roberts,* (154 N. Y. 101), we held that in appraising the capital stock of a domestic corporation at its actual value, the element of the good will of the business, "including its right to conduct it under its franchise," might be included in the appraisal ; but, that the distinction between that which represented the capital stock of the company and that which represented the capital as to the shareholders was recognized, is clear from the quotation in Judge MARTIN's opinion from the language in the *Coleman* case, which I have given above.

In the *Wiebusch* case the question was as to what elements the comptroller of the state might include in reaching a determination as to the actual value of the capital stock of a domestic corporation. To apply the reasoning of that opinion in the present case, so as to make of it an authority for including good will as an element of value, would be, in my judgment, not only to misapprehend the opinion itself, but would be to lose sight of the fact that the state in the taxation of foreign corporations neither intended, nor is deemed to have power, to reach other properties of the foreign corporation than what are represented in its moneys, goods, or other tangible things, as we said in the *Seth Thomas Clock Company* case.

The legislative expression of " capital stock employed within this state " negatives the idea that its franchises, or incorporeal rights, or privileges, are intended and seems to rigidly limit the subject of assessment to tangible things, within the doctrine of the *Coleman* case. To hold the view that the element of good will may be included as a subject of taxation is to extend the jurisdiction of authorities without authority in reason, or in precedent. As well may the state claim to increase the tax upon a foreign corporation according to the greater credit it may enjoy in the community, or to the character of its reputation for fair and honest dealing.

I think we should hesitate before adding this new feature of illiberality to the tax legislation of our state.

The errors committed by the comptroller, in the respects mentioned, are such as necessitate a readjustment on his part.

It is not possible to effect any separation in this case, in the comptroller's assessment of the amount of capital employed by the relator in this state, between its tangible property and its copyrights and good will.

I think that the order appealed from and the determination the comptroller should be reversed, with costs ; so far as it included for the purposes of taxation the copyrights and good will of the relator, and that the matter should be remitted to the comptroller for a readjustment of the tax.

VANN, J.   Copyrights clearly stand on the same basis as patent rights, with reference to the subject of taxation by the state, and as we have held that the former are exempt the latter should be held exempt also.  (*People ex rel. Edison Electric Il. Co.* v. *Board of Assessors*, 156 N. Y. 417.)   The comptroller, therefore, erred when he included the copyrights of the relator " among the items of property which went to make up " the amount " of the capital employed by it within this state."   (L. 1896, chap. 908, sec. 182 ; L. 1880, chap. 542, sec. 3.)

No other item is open to discussion except the " good will of the corporation and the good will acquired by it," neither of which, as the appellant claims, was properly included as an element of value, because each is an intangible asset and beyond legislative control in this state.

In the *Wiebusch Case* (154 N. Y. 101) it was held that " the actual value of the capital stock of " a domestic corporation " is the value of its assets, after deducting its liabilities, and adding to the sum then remaining the value of the good will of the business, including its right to conduct it under its franchise."   By this decision it is established that the good will of a domestic corporation is property which was taxable as a part of its capital stock under the act of 1880.   That act was repealed by chapter 908 of the Laws of 1896, known as the Tax Law, which took effect June 15th, 1896.   The substance of the earlier act was re-enacted in the later, with a decided change of arrangement and phraseology, but perhaps with no change of meaning, so far, at least, as the question now before us is concerned.   By section 182 of the Tax Law it is provided that " every corporation   *   *   *   formed under, by or pursuant to law in this state, shall pay to the state treasurer annually, an annual tax to be computed upon the basis of the amount of its capital stock employed within this state and upon each dollar of such amount.   *   *   *   Every · corporation   *   *   *   formed under the laws of any other state or country, shall pay a like tax for the privilege of exercising its corporate franchises or carrying on its busi-

ness in such corporate or organized capacity in this state, to be computed upon the basis of the capital employed by it within this state."

The remaining question presented for decision, therefore, is whether the good will of the relator was "capital employed by it within this state."

Good will is a modern but important growth of the law, not mentioned by some of the early writers, but given great prominence at the present time. In 1810 Lord Eldon defined it as "the probability that the old customers will resort to the old place." (*Cruttwell* v. *Lye*, 17 Ves. Jr. 335, 346.)

In 1859 Vice-Chancellor Wood, in deciding the case of *Churton* v. *Douglas* (H. R. V. Johns. 174, 188), held that good will carried more with it than simply the advantage of keeping the premises which were occupied by a former firm, and the chance thereby had of the customers of the former firm being attracted to those premises. He expanded the definition so as to make it embrace "all that good disposition which customers entertain towards the house of business identified by the particular name or firm, and which may induce them to continue giving their custom to it." In another part of the opinion he said: "Good will must mean every advantage * * * that has been acquired by the old firm in carrying on its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business."

In *Ginesi* v. *Cooper* (L. R. [14 Ch. Div.] 596, 600) Sir George Jessel quoted the latter definition, and added, "attracting customers to the business is a matter connected with the carrying of it on. It is the formation of that connection which is made the value of the thing which the late firm sold, and they really had nothing else to sell in the shape of good will."

In 1895 the House of Lords, through Lord Herschell, adopted the position taken in these cases, and also held that where the good will of the business is sold without further provision, although the vendor may set up a rival business, he

is not entitled to canvass the customers of the old firm, and may be restrained by injunction from soliciting any person who was a customer of the old firm prior to the sale to continue to deal with the vendor or not to deal with the purchaser. (*Trego* v. *Hunt*, L. R. [App. Cas. 1896] 7.)

In *Wedderburn* v. *Wedderburn* (22 Beav. 84) Sir JOHN ROMILLY, speaking of good will, said: "It seems to be that species of connection in trade which induces customers to deal with a particular firm."

In *Bradbury* v. *Dickens* (27 Beav. 53) it was said: "The property in a literary periodical like this is confined purely to the mere title, and the title of this work is 'Household Words,' and that forms part of the partnership assets and must be sold for the benefit of the partners."

In *Williams* v. *Wilson* (4 Sand. Ch. 379) it was held that the good will of the business built up by a copartnership in conducting an insane hospital and an immigrant lazaretto was an important and valuable interest which the law recognizes and will protect. So the name and reputation of a newspaper, the carrier's route of a city newspaper, and the name which a firm has rendered valuable by doing business under it are regarded as belonging to the good will. (*Hathaway* v. *Bennett*, 10 N. Y. 108; *Dayton* v. *Wilkes*, 17 How. Pr. 510; *Fenn* v. *Bolles*, 7 Abb. Pr. 202.)

In *Elliott's Appeal* (60 Pa. St. 161) it was held that the good will of an inn is local and does not exist independently of the house in which it is kept, and to the same effect is *Musselman & Clarkson's Appeal* (62 Pa. St. 81).

In *Chittenden* v. *Witbeck* (50 Mich. 401) it was held that good will is the favor which the management of a business wins from the public and the probability that old customers will continue their patronage, but that it attaches to the property, and, in the case of a lease, belongs to the lessee only during its continuance, and on its expiration reverts to the lessor.

In *Barber* v. *Conn. Mut. Life Ins. Co.* (15 Fed. Rep. 312) it was said that "the good will of an established business,

11

which is a common subject of contract, is nothing but the chance of being able to keep the business which has been established. The sale of a mere chance, which vests in the purchaser nothing but the possibility that the preference which has usually been extended to those whose rights he acquires will be extended to him, has been enforced in equity and recognized at law as effectual between the parties to the contract."

Judge Story, in his work on Partnership (§ 99), says that "good will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." He adds that it may be assigned with the premises and the rest of the effects.

In Parsons on Partnership it is defined as " that benefit or advantage which rests only on the good will, or kind and friendly feeling of others," and in a note it is added " that, so far as it has a transferable value, it consists in the additional value which a business possesses when it can be sold as a going concern." (4th ed. § 181.) The learned author also indorses Lord Eldon's definition, and, in another note, says, " this definition, as we have above intimated, makes good will local and an incident of the place where business has been carried on, and not of the persons by whom it has been conducted. It is in this sense only that good will is recognized by the law as a pecuniary interest."

Mr. Lindley, in his treatise on Partnership (Vol. 2, page 439), says, " the term good will can hardly be said to have any precise significance. It is generally used to denote the benefit arising from connection and reputation, and its value is what can be got for the chance of being able to keep that con-

nection and improve it. Upon the sale of an established business its good will has a marketable value, whether the business is that of a professional man, or that of any other person. But it is plain that good will has no meaning except in connection with a continuing business; it may have no value except in connection with a particular house, and may be so inseparably connected with it as to pass with it under a will or deed without being specially mentioned."

Mr. Pollock says, "that which the purchaser of the good will actually acquired as between himself and his vendor is the right to carry on the same business under the old name, * * * and to represent himself as the successor to that business." (Pollock on Partnership, art. 57.)

Good will embraces at least two elements, the advantage of continuing an established business in its old place, and of continuing it under the old style or name. While it is not necessarily altogether local, it is usually to a great extent, and must, of necessity, be an incident to a place. an established business or a name known to the trade.

The relator was incorporated in 1892, under the laws of the state of West Virginia, for the purpose of publishing and selling Johnson's Universal Cyclopædia, and of carrying on a general business of publishing and selling books, maps, charts, etc. The firm of D. Appleton & Co., of the city of New York, owns substantially all the shares of stock that have been issued, and its president, secretary and treasurer are members of that firm. It never did any business, owned any property or had an office in West Virginia, and its only connection with that state is its charter, and the payment of an annual license tax of $50. It also employs a lawyer to represent it in that state, but for what purpose does not appear. While nominally a corporation of West Virginia, for all practical purposes it is a New York corporation. In its petition for a writ to review the determination of the comptroller, referring to that officer, it says, " that he has erroneously appraised a portion of good will as capital employed within this state ; that no proof was adduced before him as to the value of such good will, or that

said good will had any value whatsoever, or as to what part, if any, was employed in this state." In its report to the comptroller, made for the year in question, which ended October 31st, 1897, it stated that its business for that year was "the putting upon the market and selling a new edition of Johnson's Universal Cyclopædia, completed in eight volumes," and that such business was carried on at "72 Fifth avenue, in the city of New York." The blank in the report calling for information as to the "nature of business transacted and amount invested outside New York state," was left unanswered. It stated, however, that all its capital was employed within this state except its copyrights, which, it claimed, were not capital employed within the state, and were not taxable for other reasons. Its secretary and treasurer testified that substantially all its stock, so far as issued, or $225,000 in amount, was transferred for the copyrights, the right to publish, and the good will of an old business established and owned by William W. Johnson. The copyrights granted by the United States government to publish the cyclopædia formerly belonged to Mr. Johnson, who transferred them to the relator in exchange for stock, which he subsequently assigned to Appleton & Co. The cyclopædia is a new one, with new articles, prepared under the supervision of a new editor, and the only thing not original about it is the name. All the business of the relator is done, and all its stock owned, in the state of New York. The cyclopædia is sold throughout the country through D. Appleton & Co. as selling agents, and the sales of the relator are made almost exclusively to that firm, and wholly in this state. By an instrument dated October 25th, 1892, "William W. Johnson, of the city of Yonkers, Westchester county, New York," assigned to the relator "Johnson's new general cyclopædia and copper-plate hand atlas of the world, including the copyright of the same, the right of publishing, the electrotype plates, the good will of the business, the business generally and the stock on hand." Said electrotype plates were of small value, as new plates were made in this state from new manuscript and new type.

1899.] People ex rel. A. J. Johnson Co. *v.* Roberts. 85

N. Y. Rep.]                    Opinion per Vann, J.

A tax of the kind under consideration is levied upon a foreign corporation " for the privilege of exercising its corporate franchises or carrying on its business " in this state. (Tax Law, § 182.) The good will of the relator, aside from that purchased of Mr. Johnson, is the result of exercising its corporate franchises and carrying on its business in this state, and is inseparable from that business. It is the product of an investment of capital in this state, and the exercise here of the privilege for which the tax was laid. To hold that it was not capital employed in this state upon the ground that the domicile of the corporation is in West Virginia, where it never transacted any business nor earned any good will by fair dealing and efficient methods, would exalt form above substance. As the good will is the result of the employment of capital and an incident to an established business, it can exist for no practical purpose in the state where the relator was organized and where it never invested any capital nor did any business. The good will of the relator belongs to its old and well-established business, which is conducted wholly in this state. It is as much a part of its business as the books which it publishes. The good name of those books is a portion of it, acquired partly by purchase from the originator of the cyclopædia, who resided in this state. The value of that name has been increased by the enterprise of the relator in expending in this state over $200,000 to enlarge and perfect the work. The value of the books, and the other tangible property used in their production, is augmented by the good will. The mere fact that good will is intangible does not take it out of the state, so far as the right of taxation is concerned, because it is inseparably attached to property which is tangible, located in this state. (*Matter of Houdayer*, 150 N. Y. 37.) It exists at the place where it has a market value, which is where the relator carried on its business and earned a reputation for superior work and honorable conduct. This reputation was not built up in West Virginia, where it did no business, but in New York, where it did all its business. It could neither be sold nor used to advantage in the former state.

If we hold that the good will of a foreign corporation is not taxable here, simply because it is intangible, although it grew up here, has a market.value here and nowhere else, we place a premium on non-resident corporations by relieving them of a burden that we place upon domestic corporations. As was said in *Martine* v. *International Life Ins. Soc.* (53 N. Y. 339, 347), "It would be most unreasonable for these foreign corporations to ask the privilege of doing business under our laws in competition with domestic institutions, and then ask exemption from the obligations and liabilities which attach to the latter." It is a matter of common knowledge, as well as of grave public concern in this state, that, for the sake of a paltry license tax, certain sister states are competing with each other in granting loose charters without adequate protection for the public, and thus inducing the promoters of corporations to organize under their statutes, when there is no intention of investing capital or doing business in the state where the organization is effected. Such selfish and unfriendly legislation should not be encouraged by the courts of the state which is most injured by it.

While the order of the Appellate Division must be reversed, we base our reversal solely upon the ground that the copyrights of the relator are not subject to taxation by the state. We have discussed and decided the question relating to good will in order to guide the comptroller in readjusting the tax.

The order appealed from and the determination of the comptroller should be reversed, with costs, and the matter remitted to the comptroller for readjustment of the tax.

Parker, Ch. J., Bartlett and Martin, JJ., concur in opinion of Vann, J.; O'Brien and Haight, JJ., concur in opinion of Gray, J.

Order and determination of comptroller reversed, with costs, etc.