sented by the appeal from the order of confirmation and judgment, and, as we find no error to exist therein, it follows that the order should be affirmed, with $10 costs and disbursements. All concur.

---

(58 App. Div. 535.)

PEOPLE ex rel. NEW YORK & Q. GAS & ELECTRIC CO. v. FEITNER et al., Tax Com'rs.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. TAXATION—ERROR—BURDEN OF PROOF.

It is incumbent on a taxpayer to establish conclusively that an assessment complained of is erroneous.

2. SAME—CORPORATE STOCK.

A corporation must prove the value of its franchises before it can claim deductions therefor on an application to correct an assessment of its capital stock.

3. SAME.

In the absence of other evidence, the cost of the real estate of a corporation, as shown by its books, furnishes a proper basis for valuation thereof in ascertaining the value of its assets for the purpose of fixing the value of its capital stock subject to taxation, and the assessors are not bound by a previous assessed valuation thereof.

Appeal from special term, Queens county.

Certiorari by the people, on the relation of the New York & Queens Gas & Electric Company, against Thomas L. Feitner and others, as commissioners of taxes and assessments of the city of New York, to review a tax assessment. From an order quashing the writ, the relator appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Charles F. Mathewson, for appellant.

George S. Coleman, for respondents.

GOODRICH, P. J. The relator (hereinafter called the "Gas Company"), as successor to, and owner of, the New York & Queens Light & Power Company (hereinafter called the "Light Company"), brings certiorari to review the assessment of its personal property. The assessors originally assessed such personal property at $250,000. Application was made to the commissioners for the correction of the assessment, and, after taking testimony, the amount was reduced to $112,400. This result was reached as follows:

```
Real property ............................................... $270,045
Personal property ...........................................   19,539
                                                             ---------
                                                             $289,584

Bonds .................................... $135,000
Outstanding acc'ts .......................    7,141

Deductions—Indebtedness .................. $142,141
Assessed value real estate................   35,000
                                           ---------
                                                               177,141
                                                             ---------
                                                             $112,443
```

The Gas Company's claim is stated in the report which it made to· the commissioners on the application for correction, as follows:

Total gross assets, including real estate........................ $82,310 33·
Of above, real estate............................ $ 62,770 45
Of above, property.............................. 19,539 88
Capital stock actually paid in or secured to be paid in.. 150,000 00
Amount of surplus earnings....................... 557 15

The Gas Company claims that the assessment is erroneous in two· items: First, that there are outstanding $135,000 of mortgage bonds; and, second, that no allowance is made for $7,141.15, accounts payable of the Light Company.

On the application to the commissioners for reduction, the treasurer of the Gas Company was. examined as a witness, and testified that he included in the item, "Real estate, $62,770.45," all the land,. poles, wires, engines, etc., of the company; that he did not know the cost of the plant, as it was not erected by the Gas Company; that the land cost $4,500; that the buildings thereon cost $8,976.32; and that the cost of poles, wires, etc., was approximately $22,382.82. "Q. At how much is that property carried on your books as an asset? A. The cost of the plant on our books is carried in a total amount, representing stocks and bonds paid for construction. Q. How does it represent stocks and bonds? A. We undertook to enter into a contract to build a plant, and we paid in stocks and bonds the face value of the cost of the plant. Q. What is the cost of that property figured in stocks and bonds, if it was paid for in that way? A. I cannot determine the ratio. Q. What is the amount at which it is carried on your books as an asset? A. The cost of the plant? Q. Yes, sir. A. $270,045. Q. What is the amount at which the poles, wires, and so forth, situated in the streets, is carried on your books as an asset? A. They are included in that. These figures I am giving you now are included in the cost of the plant. Q. At what amount? A. As I stated before, $22,382.82. Q. Then the book value, the amount at which all your real property is carried on your books as an asset, is $270,045? A. Not only the real property, but poles, land, and everything in connection with the cost of the plant, up to January 15th." He also testified that the company had issued $135,000 of bonds. "Q. How were these bonds paid for? A. They were paid for in return for labor and so forth furnished, and construction of the plant. Q. Were these the bonds which were given in payment of the real estate? A. Not for the real property, but for the construction of the whole plant. Q. It is by reason of such payment they are carried on your books for real property? A. Not only real property, but the total cost of the plant, is in that $270,000,— the total cost to place us in business, and to furnish electric current." The counsel for the Gas Company stated in his brief that the· $270,045 includes, not only the real estate, but all the tools, machinery, and other personal property of the company, and its franchises, the good will of the business, and every other expenditure to "place the company in business and furnish electric current." The difficulty is that the Gas Company did not furnish to the commissioners any evidence which would enable them to ascertain the value of

the franchises or the good will, or the amount, if any, paid for them.

The good will of a corporation, though of an intangible nature, is taxable with the franchise, as forming a part of the value of the share stock. People v. Roberts, 159 N. Y. 70, 53 N. E. 685; Same v. Dederick, 161 N. Y. 195, 55 N. E. 927. The burden was upon the Gas Company to establish conclusively that there was error in the method by which the assessors arrived at their original valuation, and that the assessment did not report the fair value of the property assessed. On the other hand, it is to be presumed that the assessors properly performed their duty in the original assessment. People v. Davenport, 91 N. Y. 574. Section 12 of the tax law (chapter 908, Laws 1896) distinctly states the method of assessing ·the capital stock of a corporation, viz. that such stock, "except such part of it as shall have been excepted in the assessment roll or shall be exempt by law, together with its surplus profits or reserve funds exceeding ten per centum of its capital, after deducting the assessed value of its real estate, * * * shall be assessed at its actual value." In People ex rel. New York Clearing-House Bldg. Co. v. Barker, 31 App. Div. 315, 51 N. Y. Supp. 1102, 53 N. Y. Supp. 1111, affirmed without opinion (158 N. Y. 709, 53 N. E. 1130), and by the United States supreme court (179 U. S. 279, 21 Sup. Ct. 121, 45 L. Ed. ——), it was held that this law requires the valuation of the whole property owned by the corporation, whether real or personal, in order to ascertain the capital which is subject to taxation, and that after the assessed value of the real estate is deducted therefrom the balance is the capital, subject to assessment after deducting debts and legal exemptions.

It would seem to be easy to provide a formula for arriving at the actual value of corporation stock, viz. to ascertain the value of all the corporate real and personal property, and from the aggregate deduct the value of the real estate and the corporate indebtedness. But the ascertainment of the value is cumbered with the necessity of fixing the value of the franchises of the corporation. It was incumbent on the Gas Company to prove the value of its franchises before it could claim a deduction therefor. No such evidence was presented to the commissioners. On the contrary, the treasurer, Mr. Morrow, stated that the cost of the plant was carried on the books at $270,045, and that the outstanding bonds, amounting to $135,000, were given, not for the real property, but "were paid for in return for labor and so forth furnished, and construction of the plant"; "not for the real property, but for the construction of the whole plant"; "not only real property, but the total cost of the plant, is in that $270,000,—the total cost to place us in business, and to furnish electric current." It is impossible to deduce from such evidence that any cost of franchises is included in this amount, or that anything was paid for franchises. On the contrary, it does not appear that the franchises have any large value. Any three or more persons, upon complying with article 6 of the transportation corporations law, may become a corporation for lighting streets of cities with gas or electricity. It does not appear when the Light Company was incorporated, but the Gas Company was incorporated June, 1899. We may assume that both corporations were organized for the purpose of supplying gas or electric lighting

within the city of New York, as the petition states that to be the principal place of business, and as all the property of the gas company is situated therein.   The city, through its proper department, is authorized, by title 8 of the Greater New York charter, to make contracts for gas or electric lighting.   We cannot assume that any improper influences were used or illegal fees paid for any contract between the city and the corporation for the use of gas or electricity, and, even if there were, it could hardly be deemed a legal basis for the valuation of franchises.   It is difficult to see that there was any "cost" to the company for obtaining its franchises, beyond the legal fees of incorporation.   Therefore, as Mr. Morrow testified that the cost of the plant was $272,045, we must assume that that sum was the actual cost of the plant, and, in the absence of other evidence, this furnishes a basis for valuation.   At any rate, the Gas Company has failed to show anything to prove error in the assessment, and has furnished to the court nothing upon which we can arrive at any other conclusion than that the cost of the plant as carried on the books was the actual cost, without relation to the value of any franchises.

I find nothing in the record which shows that the assessors' valuation of the real and personal property of the corporation was erroneous or unjust.   Neither are assessors bound by the previous assessed valuation of the real estate, and they may legally disregard it, and estimate the real estate at its actual value, although this exceeds the assessed valuation.   People ex rel. Equitable Gaslight Co. v. Barker, 144 N. Y. 94, 39 N. E. 13.

As to the Gas Company's first contention, that the amount of the mortgage bonds should be deducted, the return and the schedule above set out show that such deduction was actually made.   It also appears that the outstanding accounts payable, amounting to $7,141.15, have been deducted.

The order, therefore, should be affirmed, with $10 costs and disbursements.   All concur.