## Commonwealth v. Stephano Brothers

*Carl F. Chronister*, Deputy Attorney General, and *James H. Duff*, Attorney General, for Commonwealth.

*F. Raymond Wadlinger* and *William Alexander* of *Foulkrod, Sheppard, Porter & Alexander*, for defendant.

HARGEST, P. J., October 11, 1943.—This case comes before us on an appeal from the settlement by the fiscal officers of a capital stock tax for the year ending December 31, 1937. A stipulation was filed dispensing with a trial by jury.

## Facts

We have answered the requests for findings of fact and filed the same of record, but, in addition, we find the following:

1. Stephano Bros., a Pennsylvania corporation, was doing business in this State during the year 1937 and subject to capital stock tax, under the Act of June 1, 1889, P. L. 420, 72 PS §§1901, 1902, as last amended by the Act of April 8, 1937, P. L. 239.

2. Prior to January 1913, Stephano Bros. was operating as a partnership, and in that year transferred all its assets and liabilities to Stephano Bros., Inc., a Virginia corporation.

3. In March 1918 all the assets and liabilities of Stephano Bros., Inc., the Virginia corporation, were transferred to Stephano Bros., Inc., a Pennsylvania corporation, this defendant.

4. A capital stock tax report was filed for the year ending December 31, 1937, upon which a tax liability was settled as follows: $\frac{4,321,555}{5,661,620}$ x \$2,500,000, the numerator being the assets in Pennsylvania and the

denominator being the total assets. The multiplicand was the value of the capital stock. Subsequently, upon a petition filed, there was a resettlement made, which used the same figures for the numerator and denominator but revised the value of the capital stock to $2,300,000.

5. Defendant reported goodwill as a book value of $2,200,050, but it reported no actual value for goodwill. This figure was included in both the numerator and denominator above given.

6. The balance sheet reported by the company shows the actual value of assets to be $3,444,538.54; the book value reported shows $5,661,628.91; the difference being the deduction of prepaid insurance premiums of $17,040.37 and the goodwill item of $2,200,050.

7. The tangible property outside of Pennsylvania amounted to $1,340,073.

8. During the year 1937 the gross sales of merchandise, of which 80 percent was received from the sale of Marvel Cigarettes, amounted to $18,065,036.19, and the net sales $17,708,100.79. The net profit during that year was $395,826.49. The average earnings for five years were $169,172.

9. The dividends for the year 1937 amounted to $126,000.

10. The value of the capital, as appraised by the officers of the company, excluding the item of goodwill, is $1,445,036. The taxable value of the capital stock, reported by the officers of the company, is $844,703.22, and the taxable value of the capital stock fixed by the accounting officers is $1,755,603, upon which a tax at the rate of 5 mills is $8,778.02.

11. The original tax settled was $9,541.33, which the company has paid.

12. Defendant reported investment in United States revenue stamps of $78,018.66 in one item of its report, which is apparently the amount on hand at the end

of the year 1937. It reported the amount on hand January 1, 1937, $103,868, which resulted in an average of $90,943 so invested.

13. Stephano Bros. sells the following brands of cigarettes, with United States trade-marks: Rameses, Stephanos, Aphros, Aphrodites, Mercury, Smiles, Embassy, Heralds, Marvels and Five-Stars. The profit is largely realized from the sale of Marvels, which has increased from $438.71 in 1932 to $561,354.64 in 1937.

14. In January 1913 the consideration paid by Stephano Bros., Inc., a Virginia corporation, to Stephano Bros., the partnership, according to a contract dated December 17, 1912, included "Goodwill, Trademarks, etc."

15. A duplicate of the journal entry made as of March 1918, showing the transfer from the Virginia corporation to the Pennsylvania corporation, includes "Goodwill, Trademarks, etc. $2,200,050"; "Machinery, Tobacco and other Material $589,950"; and an excerpt of the stockholders' meeting of the Pennsylvania corporation recites that the consideration for the purchase is "all of the said property, assets, surplus and goodwill of their company, as of March 1st, 1918." This goodwill, amounting to $2,200,050, has been carried upon the books of the Pennsylvania corporation without change from the date it was acquired down to and including 1937.

16. In 1936, for some reason not explained, the accounting officers did not take into consideration the goodwill in assessing the capital stock tax against this company.

17. In determining the taxable value of the capital stock, it is the practice of the fiscal departments to include goodwill as an asset if it has an intrinsic value.

### Statute involved

The capital stock tax is imposed pursuant to section 20 of the Act of June 1, 1889, P. L. 420, as last

amended by the Act of April 8, 1937, P. L. 239, 72 PS §§ 1901, 1902.

This act requires corporations to make annual reports showing the capital stock, the debt, the income, the general balance sheet, and real estate and tangible property owned and located outside of the Commonwealth, including a valuation by the officers of the company and appraisal of the capital stock in the manner provided in the act.

That appraisal must contain, inter alia, an appraisal of the actual value ". . . not less, however, than, first, the average which said stock sold for during the year; and second, not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, not less than the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, *and of the value of its good will and franchises and privileges, as indicated* by the material results of their exercise, taking also into consideration the amount of its indebtedness." (Italics supplied.)

The part of the statute above quoted was put into it by the Act of June 2, 1915, P. L. 730, and has remained in the same language ever since.

### Discussion

Questions involved:

Defendant contends that:

1. There is no authority for taxing goodwill as a part of the valuation of the capital stock; and even if goodwill is to be included the accounting officers have illegally taken the book value and not the actual value of the goodwill;

2. The accounting officers have erroneously arrived at the average value of the tangible assets employed outside of Pennsylvania; and

3. The accounting officers have illegally taxed the investment in United States revenue stamps.

1. Since the statute, in terms, directs the accounting officers to include "the value of its good will", this seems to be the first time, so far as the writer knows, at least since 1915, when it has been definitely asserted that the value of the goodwill cannot be included in ascertaining the actual value of the capital stock. We might conclude our discussion of this proposition at this point, if it were not for the fact that defendant raises a further question.

In 24 Am. Jur. 802, §1, it is said:

"Good Will . . . is a modern but important growth of the law, not mentioned by some of the early writers, but latterly given considerable prominence."

There have been many definitions of goodwill. Perhaps the one most resorted to is that of Mr. Justice Story, on Partnerships, sec. 99:

". . . the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

See 24 Am. Jur. 803, n. 13, and 28 C. J. 729. There are so many other pertinent definitions that it would be useless to attempt to quote them. That goodwill is property and subject to sale has also been repeatedly held: J. L. Cooper & Co. v. Anchor Securities Co. et al., 113 P.(2d) 845, 849 (Wash., 1941); Canadian Club Beverage Co. v. Canadian Club Corp., 168 N. E. 106, 108 (Mass., 1929); People ex rel. A. J. Johnson Co. v. Roberts, 159 N. Y. 70, 53 N. E. 685; Common-

wealth v. Gimbel Bros., Inc., 18 Dauph. 385; Commonwealth v. Wagner-Taylor, 40 Dauph. 23.

We are here dealing with a domestic corporation, but even as to a foreign corporation it was said, in People ex rel. A. J. Johnson Co. v. Roberts, supra (p. 689) :

"It is the product of an investment of capital in this state, and the exercise here of the privilege for which the tax was laid. To hold that it was not capital employed in this state, upon the ground that the domicile of the corporation is in West Virginia, where it never transacted any business nor earned any goodwill by fair dealing and efficient methods, would exalt form above substance."

But defendant here says that the Commonwealth has taken the book value of the goodwill and not the actual value.

Defendant submitted a general balance sheet in which there were nine items. The net book value of each was precisely the same as the reported actual value of each. The column for book value contains prepayments of insurance of $17,040.37, which was not included in the actual value, and the item of goodwill, $2,200,050, which was not included in the actual value. The total of net book value was $1,661,628.91, and the total actual value $3,444,538. The Commonwealth taxing officers arrived at their calculation by taking the total assets as given in the book value column as the denominator, and deducting therefrom the average tangible property outside the State, amounting to $1,340,073, leaving $4,321,555 as the numerator, which figure, multiplied by the value of the capital stock, $2,300,000, made a taxable value of the capital stock of $1,755,603.

Defendant contends that the fraction should, by deducting the $2,200,050 of the capital stock from both the numerator and the denominator, have been $2,121,820 over $3,461,578, and that the correct tax-

able value of the capital stock is $1,409,670, which would have resulted in a tax of $7,048.35. By a process of readjusting the figures defendant, in its requests for findings, contends that the tax, originally conceded to be $7,048.35, should be $6,003.92.

The principal question confronting us is whether the accounting officers had the right to take the reported book value of the goodwill as the actual value thereof.

We must start with the presumption that the appraisement made by the officers of the corporation is to be considered prima facie correct, but, as we said in Commonwealth v. Dunkard Valley Oil & Gas Co., 41 Dauph. 164, when it appears that the officers have not taken into consideration the elements which the statute says should be considered in arriving at the value of the capital stock, and have adopted an arbitrary method, the presumption in favor of their estimate disappears. See also Commonwealth v. Pomeroy's, Inc., 48 D. & C. 334, Commonwealth v. American Coke Co., 5 Dauph. 151, and Commonwealth v. The Provident Life & Trust Company of Philadelphia, 12 Dauph. 104.

The history of this corporation indicates that the corporation treated the goodwill as worth the very same amount at which it was carried upon the books of the Virginia corporation. The Virginia corporation, Stephano Bros., Inc., paid $2,200,000 for the goodwill from the partnership, and the present Pennsylvania corporation paid $2,200,050 when it bought and took over the Virginia corporation. It has carried that amount in its books ever since. In view of the earnings, the dividends, and the volume of business, we find that the goodwill of this corporation is a valuable asset. That being so, the officers of the company have disregarded their statutory duty in failing to furnish any other valuation except that which they themselves put upon the goodwill when they bought it from the Virginia

corporation, and at which figure they have carried it ever since.

Under all these circumstances we are of opinion that the accounting officers had the right to treat the goodwill as of the same actual value which the officers of the corporation treated it when they were dealing with it in a matter of bargain and sale.

2. The exempt assets representing tangible property employed or located outside of Pennsylvania are arrived at by taking the amount at the beginning of the year and at the end of the year and striking an average. So far as we know, this is the uniform method and has been found to produce equitable and mathematically sound results.

We see no valid reason for disturbing this uniform practice, even though in a particular instance a more exact result might be obtained by resorting to some other process.

We, therefore, conclude that the amount used by the accounting officers, thus obtained, was correct.

3. Is it lawful for the State to impose a tax upon the investment in United States revenue stamps?

The report made by the company showed revenue stamps of $78,018.66, which, in arriving at the fraction to ascertain the taxable value of the capital stock, was included both in the numerator and the denominator. In making the settlement, the accounting officers simply marked in red pencil "Not Ex.", and included it. Neither the petition for resettlement nor the petition for review contained any specific reference to it, nor does the specification of objections refer to it.

The first contention concerning this item is in defendant's brief filed in this court.

Two questions are therefore raised:

A. Whether the revenue stamps are taxable, and

B. Whether the question has been properly raised so as to enable us to pass upon it.

A. We confess to surprise that this item of United States revenue stamps was included in the taxable value, and also to a further surprise at the dearth of authorities upon the precise proposition. Defendant has referred us to one case, and, after a rather extended search, we have been unable to find another case in which the question of the power of the State to tax revenue stamps was decided. Perhaps it is because the matter has appeared so plain to the profession that no lawyers have had the hardihood to raise it since the case of Palfrey v. City of Boston, 101 Mass. 329 (1869), 3 Am. Rep. 364.

In that case plaintiff carried on the business of selling internal revenue stamps procured by him from the Government of the United States, and the sum sought to be recovered from him was an assessment upon his stock in trade in such stamps. The court said (p. 333):

"The tax is upon the property in his possession and ownership, held for the purposes of business at the place where the tax is laid:

"The property, which constituted the stock in trade of the plaintiff, and upon which the tax was imposed, consisted entirely of internal revenue stamps. These are instruments of the general government for the performance of its legitimate functions. They themselves represent the tax which that government levies upon the business of the community, for its own support. They are the drafts by which that tax is received in advance, and the vouchers by which its payment is made manifest. It is their capacity to answer these purposes which gives them value as property. They have no value otherwise. We think it clear therefore that, as property, they are exempt from all state and local taxation."

We are of opinion that the reasoning is so cogent and the proposition so plainly stated in the Palfrey case that we must follow it. It is thoroughly settled

in the multitude of decisions from M'Culloch v. Maryland et al., 4 Wheat. 316 (1819), to the present day that neither the State nor the Federal Government can tax the instrumentalities employed by the other in carrying into execution its constitutional powers, and it is too clear to merit discussion that revenue stamps required by the Federal Government to be placed upon packages of cigarettes are revenue-raising instrumentalities of the Federal Government.

B. Section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, providing the machinery for appeals from the settlement of taxes, enacts:

"Appeals taken hereunder shall be hearings de novo, but *no facts* shall be admitted in evidence that were not brought to the attention of the department making the settlement, or in the application for resettlement, or petition for review prior to the appeal, and set forth in the specification of objections contained in the affidavit accompanying the appeal, unless the court shall be satisfied that the appellant was unable, by the exercise of reasonable diligence, to have laid such evidence before the department making the settlement and the Board of Finance and Revenue, and no questions shall be raised which are not included in the specification of objections filed as hereinbefore provided." (Italics supplied.)

In Commonwealth v. The Union Trust Company of Pittsburgh, 50 Dauph. 266, we had occasion to refer to the history of, and construe, this provision of the law, which we further amplified in the case of Commonwealth v. Ford Motor Co., 45 D. & C. 492.

In the former case we said at page 272:

"It remains to consider what is the meaning of the language 'no facts shall be admitted in evidence that were not brought to the attention of the department.' The word 'facts' is not a happy expression. A fact is something accomplished, settled. In 25 C. J. 325, it is

said: ' "Fact" has a variety of meanings. It may signify an act, a deed, a thing done or said, an effect, something fixed or unchangeable.' And in Tyennstor v. Ford Motor Co., (Mich.), 280 N. W. 823, 825, it is said: 'It is sometimes used as synonymous with evidence but not correctly so used.' The statute does not say that 'no evidence to prove facts shall be admitted in court which was not presented to the department or set forth in the specifications.' It is not the evidence which the statute requires to be brought to the attention of the department, it is the 'fact' which shall be brought to the attention of the department."

So far as the facts are concerned, we think defendant has met the requirement of the statute in the instant case, because it has submitted the fact of its investment in the internal revenue stamps. But it is impaled upon another horn of the dilemma. The statute not only requires that the facts shall be presented either in the report, the petition for resettlement, or the petition for review, and set forth in the specification of objections, but also requires that "no questions shall be raised which are not included in the specification of objections filed as hereinbefore provided".

This language is plain. It was intended that, after the facts had been brought to the attention of the accounting officers, the questions of law should also be brought to their attention, as well as to the attention of the court in the specification of objections, so that the Commonwealth might have full opportunity to meet and answer any arguments to be based thereon.

The instant case abundantly illustrates the reason for the provision. The briefs prepared upon both sides, under our rule of court, are submitted at the time for argument. Both briefs were filed May 19, 1943. The Commonwealth's brief has no reference to this question for the very good reason that it was not raised until the presentation of defendant's brief on the very

same day. We think the language is clear, and, notwithstanding the defendant might have prevailed on the merits of this question, we are precluded from passing upon it.

For the foregoing reasons we come to the following

### Conclusions of law

1. By the Capital Stock Tax Act of June 1, 1889, P. L. 420, PS §§1901, 1902, as last amended by the Act of April 8, 1937, P. L. 239, the legislature specifically directed the corporate officers to appraise the value of goodwill in determining the net worth of their companies.

2. By said statute the legislature recognized the existence of goodwill as property subject to a capital stock tax.

3. Aside from the statute, goodwill is recognized by the great weight of judicial authority as intangible personal property subject to purchase, sale, and taxation, and may be a valuable asset of a corporation.

4. Although defendant's officers returned its goodwill as of no actual value in its 1937 capital stock tax report, the taxing officers, having determined that it possessed an intrinsic value, were justified in taking such value into consideration in arriving at the valuation of defendant's capital stock.

5. When Stephano Bros., Inc., a Virginia corporation, purchased the business from Stephano Bros., a partnership, the goodwill was appraised at $2,200,000, and when Stephano Bros., this Pennsylvania corporation, purchased the business of Stephano Bros., Inc., the Virginia corporation, the goodwill was appraised at $2,200,050. In both transactions the goodwill was treated as an intangible asset of substantial value and became a capital investment of the purchasing corporation.

6. In determining the actual value of goodwill, aside from the figure placed upon it by the corporations in the purchase and sale, the accounting officers, in considering the reputation of the company's product, the earning potentiality of its business, the profits, and the dividends, were justified in appraising the goodwill at the value put upon it by the corporation when it dealt with it in the purchase from the Virginia corporation.

7. Defendant complied with section 1104 of The Fiscal Code in presenting the facts of the investment in United States revenue stamps.

8. Defendant did not comply with section 1104 of The Fiscal Code in that it did not include in the specification of objections filed in this court any question with reference to the validity of the taxation of its investment in internal revenue stamps of the United States, and therefore is not entitled to have that question determined in this proceeding.

9. Judgment must be entered in favor of the Commonwealth.

### Statement

Defendant has paid all of the tax settled against it, and therefore no interest is due thereon.

The tax liability as determined on the resettlement ........................$8,778.02
Defendant claims that it should be ...... 6,003.92

The amount of tax in dispute ...........$2,774.10
Upon which, notwithstanding the payment, an Attorney General's commission of 5% is due ........................ $138.71

### Judgment

And now, October 11, 1943, defendant having paid the tax, judgment is hereby directed to be entered in

favor of the Commonwealth, and against defendant, for the sum of $138.71, being the Attorney General's commission upon the amount in dispute, unless exceptions be filed within the time limited by law.