PEOPLE ex rel. VICTOR KOECHL & CO. v. MORGAN, State Comptroller.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. CORPORATIONS—FRANCHISE TAX—CAPITAL—GOOD WILL.

The good will of a corporation is an asset to be considered in fixing the franchise tax under Laws 1896, p. 856, c. 908, § 182, imposing a license tax on corporations computed on the basis of capital employed.

2. SAME—ESTIMATION OF GOOD WILL.

It was not error for the comptroller, in fixing the amount of a corporation's franchise tax under Laws 1896, p. 856, c. 908, § 182, requiring such tax to be computed on the basis of capital employed, to take a corporation's own estimate of its good will.

Certiorari to review the action of William J. Morgan, as comptroller of the state, in stating the account for taxes against Victor Koechl & Co. Determination of the comptroller modified, and, as modified, affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Edmund L. Cole, for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for respondent.

CHASE, J. The defendant is a foreign corporation organized under the laws of West Virginia January 13, 1896. Its capital consists of 5,000 shares of $100 each; 2,000 shares of which capital is preferred stock, and 3,000 shares of which is common stock. The relator was organized to purchase and become the successor in business of the firm of Shulzberg & Koechl. Shulzberg & Koechl was a partnership. There had been several partnerships prior to that of Shulzberg & Koechl, each of which had succeeded to the business of its immediate predecessor. Mr. Shulzberg retired from the firm of Shulzberg & Koechl, and Mr. Koechl transferred to the relator all of the assets of the partnership, including what he denominated the "good will," and the relator issued to him all of the said stock except five shares, which were issued to his employés. The amount of said capital paid in cash, stock on hand, bills receivable, and tangible property of said old partnership was $133,622.38, and the amount of said capital paid by the good will of said partnership was $366,377.62; and the treasurer of the company reported that $100 had been paid into the treasury of the company for each share of stock issued. The business of the relator is "foreign commerce; incidental thereto the sale of broken packages of imports, and sale of domestic merchandise, and the manufacturing of colors and sizing for textile goods." The relator sells in this country the goods and products of certain firms of foreign countries. No one other than the relator has the right to

import and sell the goods and products of said firms in this country. This exclusive privilege is enjoyed by the relator, and was enjoyed by the firm of Shulzberg & Koechl, and by the several firms of which it was the final successor. The relator not only succeeded to the business of Shulzberg & Koechl, but it continued the business in the same places and in exactly the same way. It obtained whatever value then existed in the advantage and privilege of doing business in the places where said business had been conducted, and in being the successor in business of Shulzberg & Koechl; and that such advantage and privilege was valuable is shown by the fact that it continued the business as it had theretofore been conducted, and made the large profits that are shown by its report. About 83 per cent. of the net profits of the business of the relator was made from the sale of such foreign goods and products so exclusively handled by it. For the year ending October 31, 1899, the relator declared a dividend from profits of its business of 6 per cent. on its preferred stock and 56.9584 per cent. on its common stock. The stock of the relator, which was principally owned by Mr. Koechl at the time when the corporation was organized, is now principally owned by another person, but the business of handling said foreign goods and products remains with the relator.

Good will, whether it consists of the favor which the management of a business wins from the public and the probability that old customers will continue their patronage, or the advantage acquired by a firm in carrying on its business at a particular place in a particular manner, or by reason of any other matter or thing connected with its place of business, its name, its history, or its surroundings, is necessarily uncertain and intangible. If it exists at all, it has value. The value necessarily depends very largely upon the ability to retain such advantage or favor. The advantage and privilege of continuing the representative of the foreign firms as the relator and its predecessors in business have retained the same doubtless depends in part upon the personnel of the officers and stockholders of the relator; but the business in this country, including the history of the successive firms and the long list of old customers by which it is enabled to market the large products of the foreign firms, is also an important part of the advantage and favor held and retained by the relator. Whatever it is that enables the relator to retain such advantage and favor, it is sufficient so that it has been transferred from partnership to partnership, and from the last remaining partner to the relator, and it is retained by the relator notwithstanding the stockholders have almost entirely changed. Apparently it is now, as it has always been, a matter of uncertainty whether the business can be continued as it has been continued in the past. That uncertainty, however, only affects the value to be placed upon such good will or privilege. The relator purchased this right and privilege at $366,377.62, and still retains it. Stock was issued therefor, and the relator, in its report to the comptroller, has denominated it "good will." So long as it is retained, it is certainly very valuable, and has very largely enabled the relator to pay a most unusual dividend on its stock. Good will is an asset to be considered in fixing the amount of capital employed by the relator

within this state under section 182 of the tax law (Laws 1896, p. 856, c. 908). People ex rel. A. J. Johnson Co. v. Roberts, 159 N. Y. 70, 53 N. E. 685, 45 L. R. A. 126.

We cannot say that the comptroller was in error in taking the relator's own estimate of the value of such good will. We think, however, that the comptroller made an error in computing the amount of capital employed by the relator within this state. The evidence before the comptroller shows that, apart from said good will and capital actually employed in the state in manufacturing, the average amount of capital employed by it within this state was $91,237.04, and such average amount of capital employed by it outside of this state was $86,852.83. The percentage of the entire amount of said capital of the relator which is employed in this state is .51231. Taking the same percentage of the value of said good will as employed in the state of New York, we have $187,698.91; making a total amount of said capital employed by the relator in the state of New York $278,935.95. Dividing this proportionately between the preferred stock and the common stock, we have the value of that portion of said capital employed in this state represented by preferred stock as $111,574.38 and that portion of said capital employed in this state represented by common stock as $167,361.57, and the tax thereon would be $2,550.52.

The determination of the comptroller should be modified by reducing the tax to $2,550.52, and, as so modified, confirmed, without costs. All concur.