THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SPENCERIAN PEN COMPANY, Relator, v. OTTO KELSEY, as Comptroller of the State of New York, Respondent.

*Franchise tax — the value of a trade mark may be considered in estimating it — license fee — the act of the Comptroller in fixing it constitutes a judicial decision — how reviewable.*

When fixing the franchise tax to be paid by a foreign corporation, the State Comptroller may, in estimating the value of the capital stock of the corporation employed within the State of New York, include the value of a trade mark owned and used by the corporation.

Where the Comptroller of the State of New York fixes the license fee payable by a foreign corporation for the privilege of doing business in the State of New York at a certain amount, which is duly paid, his successor in office cannot, in a subsequent year, of his own motion and upon the same facts which were presented to his predecessor, increase the amount of such license fee, even though the original adjustment of the license fee was made on an incorrect basis.

The fixing of the license fee and the granting of a license thereon is in the nature of a judicial decision, and can only be reviewed in the manner prescribed by sections 181 and 195 of the Tax Law (Laws of 1896, chap. 908).

CERTIORARI issued out of the Supreme Court and bearing date the 4th day of June, 1904, directed to Otto Kelsey, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had in relation to the assessment of the relator for a license fee and a franchise tax for the year ending October 31, 1903.

The relator is a foreign corporation, organized under the laws of the State of New Jersey, and it has a salesroom and place of business in the city of Newark, in that State. Its capital stock is $225,000, and it was originally issued in consideration of an assignment to it of a trade mark registered under the laws of the United States. In the year 1899 the relator applied for a license to do business in this State, and the Comptroller then assessed the value of the capital employed in this State at $50,000 and levied a license tax thereon of $62.50. The evidence on which the Comptroller fixed such amount showed that the company had an office in the city of New York and did business and made sales there; also that it there had

in its stock in trade, its bank balance and its average bills and accounts receivable and its office fixtures, etc., $50,000 worth of property. This license fee was then paid and the relator operated under it until in the month of January, 1904, when the Comptroller, on his own motion, charged against the relator an increased and additional license fee, upon the basis that the whole of its capital stock, to wit, $225,000, was employed within this State. Upon proceedings thereupon had the Comptroller stated a new account against the relator, wherein the relator is charged with a license tax of $274.25, upon a basis of $219,400 of its capital being employed within this State. He also, for the year ending October 31, 1903, stated an account against the relator, wherein it was charged a franchise tax upon the basis of $225,000 of its capital stock being employed within this State. The relator then applying for a revision and readjustment of such account, the same was heard and the relator was charged a franchise tax of $1,097 on a basis of $219,400 of its capital stock being employed within this State. To review these determinations of the Comptroller, the relator has sued out this writ of certiorari.

*Charles N. Judson*, for the relator.

*Julius M. Mayer, Attorney-General*, and *George E. Pierce, Deputy Attorney-General*, for the respondent.

PARKER, P. J. :

The first question to be determined upon this appeal is, whether the Comptroller could properly include the value of the relator's trade mark in estimating the value of its capital stock employed within this State.

The attorney for the relator claims that a trade mark, being intangible property, cannot, in its very nature, be included in valuing the capital stock of a foreign corporation *employed within this State.* The domicile of such a corporation being outside of the State, and the trade mark being the mere right to exclusively use a certain symbol or device which serves to authenticate their goods when sold, and which, like any mere intangible right, attaches to the corporation itself and exists where that exists only, he claims that no part of such right has been, or can be, brought into and used

134  PEOPLE ex rel. SPENCERIAN PEN CO. *v.* KELSEY.

THIRD DEPARTMENT, MAY, 1905.                [Vol. 105.

within this State. In short, he follows the argument of Judge GRAY in *People ex rel. A. J. Johnson Co.* v. *Roberts* (159 N. Y. 70; 76–78) upon that question. But the majority of the court, on that question, distinctly held with Judge VANN, that the value of the good will of the foreign corporation then being taxed could and should be included and estimated in determining the amount of its capital stock employed in this State ; and upon the authority of that case the Comptroller has increased the license fee and levied the franchise tax now complained of.

In the case of *People ex rel. Koechl & Co.* (which was a foreign corporation) v. *Morgan* (96 App. Div. 110) this court, following the decision in the *Johnson* case, held that the good will of such corporation was properly included by the Comptroller in fixing the amount of its capital employed within this State, and there adopted a rule for determining the proportion of its good will which should, in that case, be deemed employed within this State.

The situation in that case was substantially like the one here presented, and under that authority the Comptroller has not fixed too large a figure as the proportion and value of the trade mark which in this case is to be deemed employed within this State. Hence the complaint of the relator in that respect cannot be sustained.

The further question, however, is presented whether the Comptroller could rightfully increase the license fee charged against the relator in the year 1899 from the sum of $62.50 to the sum of $274.25.

It is not pretended that the capital stock of the relator has since then been at all increased. In 1899 the relator, for the first time, applied for a license to do business in this State, under the provisions of section 181 of the Tax Law (Laws of 1896, chap. 908). The Comptroller then heard the application, and with the same facts before him as are now presented, fixed the fee at sixty-two dollars and fifty cents. Such fee was paid, the license issued, and the relator continued to act upon it until in 1904, when the present Comptroller, upon his own motion, and upon the theory that such fee was fixed upon an incorrect basis, increased it and demanded from the relator the additional amount.

I do not find in section 181 of the Tax Law (as amd. by Laws of 1901, chap. 558), nor elsewhere in the statute, any authority to

the Comptroller to so change a prior decision of himself or of his predecessor. Section 181 of the Tax Law, as thus amended, provides that if the capital stock employed in this State is increased, the Comptroller may increase the license fee accordingly. And it may be that under the provisions of that section, as amended, and of section 195 of the statute (as amd. by Laws of 1903, chap. 642), if it is erroneously fixed in the first place, the applying corporation, or the Attorney-General on the part of the State, may within a year after the account has been audited and stated, take proceedings to have the amount corrected; but nowhere do I discover any authority permitting the Comptroller, upon his own motion, to correct what he may deem to be an error of himself or of his predecessor. Nor, in my judgment, should such a practice be sustained by the courts. The fixing of such fee, and the granting of a license thereon, is in the nature of a judicial decision (*People ex rel. American Surety Co.* v. *Campbell*, 64 Hun, 417) and the circumstances under which it may be reviewed are stated in sections 181 and 195 of the statute, as above stated. Evidently, the scheme of such statute does not contemplate that whenever the Comptroller or his successor shall change his mind as to the correct rule upon which the fee should be adjusted, he may change it and notify the corporation that it must pay the difference or lose its license. Such a method would violate the first principles of judicial action.

I am of the opinion that the determination of the Comptroller as to the franchise tax should be confirmed, and that his determination as to increasing the license fee should be reversed, no costs to either party.

All concurred.

Determination of the Comptroller as to the franchise tax unanimously confirmed, and his determination increasing the license fee reversed, without costs to either party.